**RONEY & COMPANY and Jacob Rivlin, Plaintiffs–Appellees,**

v.

**Jean GOREN, Defendant–Appellant.**

No. 88–1874.

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1989.

Decided May 26, 1989.

Stuart C. Goldberg (argued), Goldberg & Schneider, New York City, for Jean Goren.

Lucinda O. McConathy (argued), U.S. S.E.C., Washington, D.C., for S.E.C. amicus curiae.

Before KEITH and KENNEDY, Circuit Judges, and McQUADE, District Judge.[*]

KENNEDY, Circuit Judge.

Appellant, Jean Goren, a customer of Roney & Company (Roney & Co.), a securities brokerage firm, appeals from a District Court order staying arbitration of her securities fraud claim pending before the National Association of Securities Dealers (NASD) and compelling arbitration of her claims before the New York Stock Exchange (NYSE) pursuant to a Customer Agreement (Agreement) between appellant and Roney & Co. Goren asserts that the arbitration clause specifying arbitration solely under NYSE rules violates both the anti-waiver provision of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. § 78cc(a) (1982), and Roney & Co.'s duty as a NASD member to permit arbitration before NASD upon demand of the customer. *See* NASD Code of Arbitration Procedure, Part III, § 12(a), NASD Manual (CCH) 3712 (1987).[1] Goren also argues that the one-year limitations period contained in the Agreement violates the Exchange Act's anti-waiver provision and its three-year statute of limitations for certain private rights of action. We disagree and shall therefore affirm the decision of the District Court.

The Customer Agreement signed by Goren when she opened her account with Roney & Co. in the summer of 1986 provided in relevant part that any dispute arising out of Roney & Co.'s handling of the customer's affairs must:

> be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange.... Arbitra-

Ronald S. Longhofer (argued), Ronald A. Schy, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for Roney & Co. and Jacob Rivlin.

---

[*] The Honorable Richard B. McQuade, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1. Roney & Co. is also a member of several other self-regulating organizations including the NYSE.

tion must be commenced within one year after the cause of action accrued by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate.

Appellant does not allege that she was induced to sign the Agreement through fraud or duress.

Appellant claims that over the next year Roney & Co. and another firm lost practically all of the several hundred thousand dollars she had invested. On August 14, 1987, Goren filed for arbitration, not before the NYSE as provided in the Agreement, but with the NASD. Among other claims, she demanded arbitration concerning violations of the Exchange Act's anti-fraud provision, 15 U.S.C. § 78j(b) (1982) (section 10(b) of the Act), and common law fraud. Roney & Co. moved to dismiss the NASD proceedings contending that the Agreement mandated arbitration before the NYSE only. The NASD Director of Arbitration denied the motion.

Pursuant to the Federal Arbitration Act (Arbitration Act), 9 U.S.C. § 1 *et seq.* (1982), Roney & Co. petitioned the District Court to compel arbitration before the NYSE. Appellant filed a cross-petition to compel NASD arbitration. The District Court found the Agreement enforceable under the Arbitration Act. It held appellant had waived any right to NASD arbitration by entering into the Agreement. The court stayed the NASD arbitration and granted Roney & Co.'s motion to compel arbitration before the NYSE. Goren appeals.

### A. Predispute Choice of NYSE Forum

#### 1. *Anti-waiver Provision*

■ Congress enacted the Exchange Act to regulate the securities markets and the brokerage business. To ensure that securities firms and their industry organizations could not circumvent the strictures of the Exchange Act, Congress declared void "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Exchange Act] or of any rule or regulation thereunder, or of any rule of an exchange required there-

by." 15 U.S.C. § 78cc(a) (1982) (section 29(a) of the Exchange Act).

In *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), the Supreme Court stated that the anti-waiver section was designed to prohibit waiver of only the "substantive obligations imposed by the Exchange Act." *Id.* at 228, 107 S.Ct. at 2338. Section 29(a), the Court reasoned, addresses only a situation where an agreement between a broker and a customer " 'weaken[s] [the customer's] ability to recover under the [Exchange] Act.' " *Id.* at 230, 107 S.Ct. at 2339 (quoting *Wilko v. Swan,* 346 U.S. 427, 432, 74 S.Ct. 182, 185, 98 L.Ed. 168 (1953)). According to the *McMahon* Court, an agreement that waives access to a judicial forum does not run afoul of the anti-waiver provision because the Exchange Act provision providing for exclusive jurisdiction in the District Court does not impose any substantive statutory duties. *McMahon,* 482 U.S. at 228–31, 107 S.Ct. at 2338–40 (distinguishing *Wilko v. Swan,* 346 U.S. at 427, 74 S.Ct. at 182, as based upon the now discarded belief that arbitration was inadequate to enforce the Securities Act). Moreover, the Court held that an agreement restricting the customer's relief to arbitration before only the American Stock Exchange, the NYSE, or the NASD did not waive any of the Exchange Act's substantive protections. *Id.* 482 U.S. at 234, 107 S.Ct. at 2341–42.

The waiver agreement in *McMahon* permitted arbitration before any one of three bodies. However, we find nothing objectionable in a voluntary agreement limiting the customer's forum to the NYSE. First, appellant's waiver did not weaken her ability to recover under the Exchange Act. Appellant has not identified a single substantive difference between NYSE and NASD arbitration to support her claim that she waived a substantive protection under the Exchange Act thereby weakening her chances of recovery. In fact, all the securities industry self-regulatory organizations (SROs) including the NASD and the NYSE eventually adopted the *same* Uniform Code of Arbitration, with minor variations not

relevant here, as recommended by the Securities Industry Conference on Arbitration (SICA). *See, e.g.,* Order Approving Proposed NASD Rule Change, Securities Exchange Act Rel. No. 16860, 45 Fed.Reg. 39608 n. 5 (June 11, 1980). The Securities and Exchange Commission (SEC or Commission) specifically found these SRO Arbitration Codes (including the NYSE Code) to be consistent with the Exchange Act. *McMahon,* 482 U.S. at 234, 107 S.Ct. at 2341–42; Brief of the SEC at 13. We are unable to discern how an agreement limiting a customer to one of these · fora or another would constitute a waiver of any substantive rights under the Exchange Act. "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974) (footnote omitted). The location of arbitration proceedings and the procedure followed are not substantive obligations triggering application at the Exchange Act's anti-waiver provision especially given the substantial similarities between NYSE and NASD procedures.[2]

Second, enforcement of customer agreements limiting the SRO before which arbitration may go forward upholds the Federal Arbitration Act's specific purpose of "reversing centuries of judicial hostility to arbitration agreements ... [by] plac[ing] arbitration agreements 'upon the same footing as other contracts.' " *Scherk,* 417 U.S. at 510–11, 94 S.Ct. at 2453 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)). "By its terms, the [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration." *Dean Witter,* 470 U.S. at 218, 105 S.Ct. at

1241 (emphasis in original). No "inherent conflict" exists between arbitration before the NYSE in this instance and the purposes underlying the Exchange Act. Because arbitration before the NYSE will fully protect appellant's right to redress for alleged Exchange Act violations, "[t]he Arbitration Act, standing alone, therefore mandates enforcement of agreements to arbitrate statutory claims." *McMahon,* 482 U.S. at 226–27, 107 S.Ct. at 2337.

Last, as the Supreme Court did in *McMahon,* we emphasize the SEC's "expansive power" to regulate the arbitral procedures of the various SROs. *McMahon,* 482 U.S. at 233–34, 107 S.Ct. at 2341–42. Although the SEC, which appeared as amicus, asserts that enforcement of the forum selection clause in this instance "would be inconsistent with the regulatory scheme set up by the Exchange Act," the SEC retains the ability "to regulate the rules adopted by SROs including the power to mandate the adoption of any rules it deems necessary to ensure that arbitration procedures adequately protect statutory rights." *McMahon,* 482 U.S. at 234, 107 S.Ct. at 2341. If, in its judgment, the NYSE Arbitration Code is inadequate to further the objectives of the Exchange Act, the Commission may, on its own initiative, "abrogate, add to, and delete from" the NYSE Code as the Commission deems necessary. *See* 15 U.S.C. § 78s(c) (1982). Such action by the SEC is preferable to any narrowing of the parties' freedom to select the SRO of their choice from among any number of nearly identical arbitral fora. Likewise, if there is a significant difference between fora, or a reason why customers should not select a forum until a claim arises, the SEC has the authority to require multiple fora.

## 2. *SRO Rules*

■ The Exchange Act imposes two types of regulations. Some provisions pro-

---

**2.** Any concerns with the inconvenience of location or duplication of claims resulting from the ability of brokers to specify arbitration before different SROs against the same customer must give way to the strong federal policy favoring enforcement of arbitration agreements. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218–21, 105 S.Ct. 1238, 1241–43, 84

L.Ed.2d 158 (1985); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983) (federal law may require piecemeal resolution of disputes in order to uphold arbitration agreements); *Liskey v. Oppenheimer & Co.,* 717 F.2d 314, 318 (6th Cir.1983).

vide direct requirements such as mandatory exchange restrictions or prohibitions against manipulative or deceptive practices. Other provisions employ self-regulative techniques to achieve particular goals. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 127, 94 S.Ct. 383, 389–90, 38 L.Ed.2d 348 (1973). Building upon a history of self-policing by the securities industry through SROs such as the National Securities Exchanges and the NASD, Congress employed self-regulation, subject to SEC oversight, in the Exchange Act. *See Silver v. New York Stock Exchange,* 373 U.S. 341, 352–53, 83 S.Ct. 1246, 1254–55, 10 L.Ed.2d 389 (1963). The Exchange Act requires SROs to register with the SEC and mandates their promulgation of rules governing the conduct of members. 15 U.S.C. § 78f (1982). Proposed SRO rules are not effective without SEC approval. 15 U.S.C. § 78s(b)(1). The SROs must enforce compliance with the rules by their members in order to fulfill the purposes of the Exchange Act. 15 U.S.C. § 78f(b)(1).

The NASD has adopted a Code of Arbitration Procedure derived from the Uniform Code of Arbitration developed by the SICA. Section 12(a) of the Code provides that:

> Any dispute, claim or controversy eligible for submission under Part I of this Code between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons *shall be arbitrated under this Code,* as provided by any duly executed and enforceable written agreement or *upon the demand of the customer.*

NASD Code of Arbitration Procedure § 12(a) (Emphasis added). The NYSE has also adopted essentially the same rule. *See* NYSE Arbitration Rule 600(a); In re New York Stock Exchange, Inc., Securities Exchange Act Rel. No. 16390 (November 30, 1979) (LEXIS, Genfed Library, RulRel File). Roney & Co. is a member of both the NASD and the NYSE.

Appellant and the SEC assert that the NASD Code § 12(a) allows the customer to demand NASD arbitration with an NASD member notwithstanding a conflicting forum selection clause contained in a customer agreement. The SEC argues that its interpretation of the NASD Code is buttressed by the historical development of SRO arbitration as a system intended to preserve customer choice among SRO arbitration fora. *See, e.g.,* Third Report of SICA to the SEC (Jan. 31, 1980) at 3 (describing the SRO arbitration system as providing for arbitration of disputes between customers and firms "under the auspices of the participating [SRO] *selected by the customer*" (emphasis added)). Roney & Co., as a member of the NASD, is bound by the NASD's Code of Arbitration. *Muh v. Newburger, Loeb & Co., Inc.,* 540 F.2d 970, 973 (9th Cir.1976) (SRO arbitration provisions contractually bind members because SRO rules constitute a contract between the members of the exchange and with the exchange itself). *See also Tullis v. Kohlmeyer & Co.,* 551 F.2d 632, 635–37 (5th Cir.1977); *Coenen v. R.W. Pressprich & Co., Inc.,* 453 F.2d 1209, 1211 (2d Cir.), *cert. denied,* 406 U.S. 949 (1972); *Goldberg v. Donaldson, Lufkin & Jenrette Securities Corp.,* 650 F.Supp. 222, 226 (N.D.Ga.1986). Accordingly appellant, as a public customer of a NASD-member brokerage firm, can demand NASD arbitration of her dispute with Roney & Co. under section 12(a) of the NASD Arbitration Code, and Roney & Co. is bound by its NASD membership to comply. *See Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc.,* 819 F.2d 400, 406 (3d Cir.1987).

To initiate arbitration proceedings under the NASD Arbitration Code, a member, a person associated with a member, or a customer must submit a request for NASD arbitration. NASD Code of Arbitration Procedure § 8. If the parties agree to submit their dispute to another SRO for resolution, NASD arbitration is not implicated and mandatory arbitration by the SRO member is not required. *See Creative Securities Corp. v. Bear Stearns & Co.,* 671 F.Supp. 961, 966 n. 8 (S.D.N.Y.

1987), *aff'd mem.*, 847 F.2d 834 (2d Cir. 1988).

We believe that the customer's ability to demand arbitration before the arbitral forum of his choice dictates that he is equally free to agree to limit his recourse to a particular forum. *Cf.* NASD Code of Arbitration § 17 (allowing "any matter" to be settled "at the election of the parties"). This decision upholds federal policy favoring arbitration without doing significant injury to customer freedom of choice or the protections of the Exchange Act.

The Arbitration Act states that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A forum selection clause in an arbitration agreement, just like any other contract provision, is entitled to complete enforcement absent evidence that the contract was procured through fraud or excessive economic power. *See Scherk*, 417 U.S. at 518–20, 94 S.Ct. at 2456–57; *McMahon*, 482 U.S. at 226, 107 S.Ct. at 2337. When Congress enacted the Arbitration Act making arbitration agreements enforceable, it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to choose an arbitral forum more convenient or more suited to a party's particular needs. *Cf. Snyder v. Smith* 736 F.2d 409, 419–20 (7th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Appellant's decision to sign the customer agreement providing for arbitration solely before the NYSE was not made involuntarily or under any misleading circumstances; therefore the parties, including appellant, are contractually bound to honor their mutual predispute choice of NYSE arbitration.[3]

Enforcement of forum selection clauses in customer agreements will not significantly hinder either customers' freedom of choice or effectuation of Exchange Act policies. The customer retains his right to select the arbitration forum of his choice when he signs his customer agreement. He also retains his right of access to SEC approved arbitral forums. Although the customer may not be able to bring all related claims against all defendants in one forum because of differing forum selection clauses contained in the various agreements, he nevertheless loses no substantive protections available under the Exchange Act. Customer preference and convenience may be impinged upon in order to ensure the enforceability of agreements to arbitrate.

### B. Contractual Limitations Period

■ Appellant asserts that the Agreement's one-year time limitation for commencement of arbitration violates the Exchange Act's anti-waiver provision as contrary to a three-year statute of limitations contained in section 18(c) of the Act. 15 U.S.C. § 78r(c). We disagree. The anti-waiver provision does not apply in this situation because state law, not the Exchange Act, provides the statute of limitations. Neither the Exchange Act nor its rules or regulations provide a limitations period for section 10(b) actions or common law fraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *IDS Progressive Fund, Inc. v. First of Michigan Corp.*, 533 F.2d 340, 342 (6th Cir.1976) (observing that the rule in almost every circuit is that the SOL for 10b–5 is provided by state law). *But see In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1550 (3d Cir.) (en banc), *cert. denied sub. nom,* — U.S. —, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988) (holding that one year SOL applies to 10(b) actions). Michigan law, which the Customer Agreement specifies will govern disputes between the parties, allows private contracts limiting the time in which suit

---

**3.** The SEC responds that several factors counsel against giving effect to the contract clause mandating NYSE arbitration. The SEC argues that the principle of unrestricted choice will allow the customer to select a forum with greater arbitration experience, such as the NASD or NYSE, a forum with speedier procedures, or a forum with convenient hearing locations. Brief of SEC at 17. While these may be legitimate customer concerns, they do not justify departure from contractual obligations freely incurred. *See* note 2, *supra.*

must be brought as long as the limitation is reasonable. *Myers v. Western–Southern Life Ins. Co.*, 849 F.2d 259, 260 (6th Cir. 1988). *See also Cange v. Stotler and Co.*, 826 F.2d 581, 584 (7th Cir.1987). We believe that the one year limitations provision in the Agreement is reasonable.

For the foregoing reasons, the opinion of the District Court is AFFIRMED.