724 F.Supp. 120 (1989)
MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, Plaintiff,
v.
Argyris G. GEORGIADIS and American Arbitration Association, Defendants.
No. 89 Civ. 1679 (RWS).
United States District Court, S.D. New York.
October 12, 1989.
*121 Brown & Wood, New York City, for plaintiff; Judith Welcom, of counsel.
Hollyer, Jones, Brady, Smith, Troxell, Barrett & Chira, New York City, for defendant Georgiadis; Robert Chira, of counsel.
American Arbitration Ass'n, New York City.

OPINION
SWEET, District Judge.
Plaintiff Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") has moved to enjoin the defendant Argyris G. Georgiadis ("Georgiadis") and the American Arbitration Association ("AAA") from proceeding with an arbitration before the AAA and to compel arbitration before the New York Stock Exchange, Inc. ("NYSE"). Georgiadis has cross-moved to obtain an exactly contrary result. The issue involves the so-called "Amex Window." On the facts and for the reasons set forth below, the motion of Merrill Lynch is granted, the cross-motion of Georgiadis denied, and the Amex Window closed.

Prior Proceedings
On February 10, 1989, Georgiadis served a demand for arbitration (the "Demand for Arbitration") before the AAA arising from alleged mishandling of his Merrill Lynch account and seeking monetary damages.
On March 3, 1989, in response to Georgiadis's Demand for Arbitration and his verified claim, Merrill Lynch filed a petition under Articles 75 and 78 of the C.P.L.R. in the Supreme Court of the State of New York, County of New York. Merrill Lynch sought by order to show cause to stay the arbitration before the AAA and to compel arbitration before the NYSE in New York City.
On March 13, 1989, Georgiadis removed this action to the United States District Court for the Southern District of New York and on March 16, 1989, served his verified answer and asserted several defenses. At a conference before the court on May 29, 1989, Merrill Lynch was directed to file this motion to compel arbitration which was heard and submitted on July 14, 1989.

The Facts
The parties are not in dispute concerning the applicable facts.
Georgiadis is a citizen of Greece who resides in Rome, Italy, and has been a customer of Merrill Lynch for the past 25 years. Merrill Lynch is a brokerage firm incorporated in Delaware doing business in New York with its principal place of business in New York County. Merrill Lynch is a member firm of the American Stock Exchange ("Amex"), a self-regulatory organization ("SRO") overseen by the Securities and Exchange Commission. The AAA is a not for profit New York corporation with its principal place of business in New York County.
In his claim filed with the AAA on February 10, Georgiadis alleges that after 25 years of investing conservatively in blue chip stocks and bonds, he was fraudulently induced to trade in "OEX" put and call options which were "uncovered" and that in the market crash of October 1987 he lost all of the more than $2 million dollar portfolio he had built up. In his claim, he asserts that Merrill Lynch and the broker who handled his account, one Herbert Uhl, breached various statutory and common law duties owed to him, including violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder.
Georgiadis signed a standard options agreement with Merrill Lynch in 1980 and attached it as Exhibit A to his claim. In the Demand for Arbitration, Georgiadis referred to Paragraph 9 of that agreement which states in relevant part:
Any controversy between us arising out of such options transactions or this agreement shall be settled by arbitration only before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed option transactions are executed.
*122 In his Demand for Arbitration Georgiadis also referred to the Amex Constitution, Article VIII, Para. 9063(2)(c), which provides that customers have the right to arbitrate disputes before the AAA in New York City.
During the period 1980 through 1987, Georgiadis traded in securities, including options on them, through Merrill Lynch on the Amex.
Merrill Lynch is also party to Merrill Lynch, Pierce, Fenner & Smith Incorporated v. Hart, 88 Civ. 3319 (MGC) in which Merrill Lynch has accepted arbitration under the Amex Constitution before the AAA but seeks to have the arbitration held in New York rather than in the regional AAA office in Florida.

Conclusions of Law

The Amex Window Is Closed By The Agreement With Georgiadis
The Federal Arbitration Act, 9 U.S.C. §§ 1-14 (1973), was intended to place arbitration agreements "upon the same footing as other contracts," H.R.Rep. No. 96, 68th conf., 1st Sess. 1, 2 (1924) quoted in Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir.1987). Enforcement of an arbitration agreement thus involves interpretation of the agreement under ordinary contract principles. Id. at 845; McAllister Bros. v. A & S Transp. Co., 621 F.2d 519, 524 (2d Cir.1980).
Recognizing that the rules of a securities exchange are contractual in nature, see Paine, Webber, Jackson & Curtis v. Chase Manhattan Bank, N.A., 728 F.2d 577 (2d Cir.1984), courts have held that the arbitration rules of an exchange may be overridden by a more specific customer agreement of the parties.
In PaineWebber Incorporated v. James R. Pitchford and J & F Supermarkets, Inc. Profit Sharing Plan, 721 F.Supp. 542 (S.D.N.Y.), decided together with two other related cases on September 14, 1989, the Honorable Kenneth Conboy confronted the issue presented here. Relying on earlier decisions, described below, and upon his analysis of the contract provisions, Judge Conboy closed the Amex Window, stating:
There is one other basis for compelling arbitration in one of the three forums specifically designated in the arbitration provision of the customer agreement. In Creative Securities Corp. v. Bear Stearns & Co., 671 F.Supp. 961 (S.D.N. Y.1987), aff'd, mem. 847 F.2d 834 (2d Cir.1988), Judge Ward, in a well-reasoned opinion, found that private agreements of the parties, such as the customer agreements here in issue, "can validly modify the arbitration provisions of [an SRO] as they apply to the parties to such agreements." Id. at 966-67. Accordingly, the arbitration agreements between PaineWebber and its customers may be said to override the AMEX constitution's provisions relating to arbitration before the AAA, such that the parties intended only to provide for arbitration before an SRO. The Claimants have not demonstrated that they will be unduly prejudiced by proceeding to arbitration in one of the forums provided for in the agreements. Indeed, these forums were selected by each of the Claimants upon the signing of the customer agreement. In addition, each claimant is given the right to elect one of three forums. Accordingly, the latest supplemental submission by counsel for some of the Claimants, received by this Court on September 8, 1989, directing our attention to SEC litigation release No. 12198, dated Aug. 7, 1989, [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 84,437 at 80,377, is not to the contrary. The release, which was specifically adopted by the SEC in order to legislate away the result in the Roney case, see id. prohibits arbitration agreements which limit customers to a single arbitration forum. According to the release, "agreements may not be used ... to limit SRO forums otherwise available to parties." See id. Here, we are not in any way preventing the Claimants from availing themselves of an SRO forum, and therefore, the letter as well as the spirit of the SEC release are satisfied.
Accordingly, in light of the above analysis, we hereby close the "AMEX Window" and direct each of the Claimants *123 to elect one of the forums specified in his or her customer agreement within 20 days of the date of this order or forfeit his or her right to elect a forum.
Pitchford, at 550.
In Roney & Co. v. Goren, 875 F.2d 1218 (6th Cir.1989), a customer of a brokerage firm sought to arbitrate before the NASD even though the customer agreement required arbitration before the NYSE. The court rejected an argument that the NASD code of arbitration creates an absolute right to NASD arbitration, holding that the NASD code may be modified by a more specific customer agreement:
[Because the] (a)ppellant's decision to sign the customer agreement providing for arbitration solely before the NYSE was not made involuntarily or under any misleading circumstances[,] ... the parties, including appellant, are contractually bound to honor their mutual predispute choice of NYSE arbitration.
Id. at 1223 (footnote omitted). See also Thomson McKinnon Securities Inc. v. Salter, No. 88-2035 (S.D.Fla. Dec. 16, 1988) (where customer sought arbitration before the AAA after agreeing to the NASD as the arbitration forum, the court held the customer to his customer agreement), appeal docketed, No. 89-5084 (11th Cir.1989); Creative Secur. Corp. v. Bear Stearns & Co., 671 F.Supp. 961, 966 n. 8, 967 (S.D.N. Y.1987) (holding that the NASD code can be modified by agreement, explaining that the "arbitration provisions of the Customer Agreement cover all controversies arising out of or relating to customer accounts."), aff'd mem., 847 F.2d 834 (2d Cir.1988).
In Piltch v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 714 F.Supp. 537 (D.C.D. C.1989), the defendant attempted to invoke AAA arbitration pursuant to the Amex Window. The court rejected the defendant's argument that the arbitration clause in the agreement violated the Amex Constitution, noting that the defendant had agreed to settle all disputes before the NYSE, NASD or Amex when he signed the agreement.
Georgiadis has cited authorities for the proposition that the obligations regarding arbitration contained in the Amex Constitution override the Customer Agreement. Axelrod & Co. v. Kordich, Victor & Neufeld, 451 F.2d 838 (2d Cir.1971), and Paine, Webber, Jackson & Curtis v. Chase, 728 F.2d 577 (2d Cir.1984). However, there was no separate arbitration agreement between the parties in either Axelrod or Paine, Webber and, therefore, the opinion simply establishes that exchange arbitration rules constitute a unilateral agreement by the exchange member to arbitrate any exchange-related controversy in the absence of a specific written agreement.
Georgiadis also argues that Section 2 of the Amex Constitution is always binding on an Amex member and that this provision allows only for Amex or AAA arbitration. The decision in Cowan & Co. v. Anderson, Index No. 1708/89 (Sup.Ct.N.Y.Cty. March 23, 1989) (Saxe, J.) on which Georgiadis relies, although upholding AAA arbitration in that case, also recognizes the contractual nature of the exchange rules. In Cowan & Co., the parties were subject to a customer agreement that provided that any dispute between them would be "settled by arbitration in accordance with the rules ... of the [NYSE, NASD or Amex]." The court found that the rules of the Amex included a right to AAA arbitration (pursuant to the Amex Window) unless the customer agreed only to arbitrate before the Amex and that there was no such agreement to limit arbitration.
Georgiadis also seeks to bring before the court the alleged unfairness of NYSE arbitration as compared to AAA. However, the differences in procedures used in NYSE and AAA arbitrations have been mooted to a substantial degree by the recent Securities and Exchange Commission ("SEC") approval of changes to the NYSE arbitration rules.[1] Indeed, NYSE rules may afford the customer additional advantages; for example, NYSE arbitrators have additional powers to direct, without resort to subpoena process, the appearance of any person employed by or associated with a *124 member and the production of any records in the possession or control of such persons or members. NYSE Rule 620. Case law also confirms that industry regulated arbitration is fair. E.g., Drayer v. Krasner, 572 F.2d 348 (2d Cir.1978); Pompano-Windy City Partners v. Bear Stearns & Co., 698 F.Supp. 504 (S.D.N.Y.1988). See also Rodriguez de Quijas v. Shearson/American Express, ___ U.S. ___, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); Shearson/American Express v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (enforcing customer agreements to arbitrate). The SEC has been quoted as stating that it "believes that security industry arbitration generally operates fairly."
Under these authorities and the Customer Agreement containing the exclusive term "only," the parties closed the Amex Window by agreement.

Judicial Estoppel Will Not Be Imposed
The question of whether a specific customer agreement overrides the Amex Constitution was not placed at issue and has not been litigated in Hart. Merrill Lynch apparently there chose not to assert its contractual rights under its customer agreement with Hart and accepted AAA jurisdiction for purposes of that case. Based on that decision, Georgiadis contends Merrill Lynch is estopped from asserting its contractual rights here.
Equitable estoppel is generally applied to estop a party from denying certain facts which he previously asserted to be true if the party to whom the representation was made has acted in reliance on the representation and will be prejudiced by its repudiation. See Konstantinidis v. Chen, 626 F.2d 933 (D.C.Cir.1980). Here, Merrill Lynch is seeking to enforce its agreement with Georgiadis. Whether the agreement overrides the provisions of the Amex Constitution is not a question of fact. Moreover, equitable estoppel cannot apply, because nowhere in the record is there any indication of Georgiadis's reliance on Merrill Lynch's prior position, a necessary element in any equitable estoppel claim.
In addition, judicial estoppel is also unavailable because it only applies if the party against whom the estoppel is claimed actually obtained a judgment as a result of the inconsistent position, see Chemical Bank v. Aetna Ins. Co., 99 Misc.2d 803, 805, 417 N.Y.S.2d 382, 384 (1979), a factor that is absent here.

Conclusion
For the reasons set forth above, the motion of Merrill Lynch for summary judgment will be granted and the cross-motion of Georgiadis denied. Settle judgment on notice.
It is so ordered.
NOTES
[1] The SEC also approved similar changes in the Amex and NASD arbitration rules.