**MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, Appellee,**

v.

**Argyris G. GEORGIADIS and American Arbitration Association, Defendants.**

Appeal of Argyris G. GEORGIADIS, Appellant.

No. 1032, Docket 89–9151.

United States Court of Appeals, Second Circuit.

Argued April 16, 1990.

Decided May 7, 1990.

Robert Chira, New York City (Hollyer, Jones, Brady, Smith, Troxell, Barrett & Chira, New York City, on the brief) for appellant Argyris G. Georgiadis.

Judith Welcom, New York City (E. Michael Bradley, and Brown & Wood, New York City, on the brief) for appellee Merrill Lynch, Pierce, Fenner & Smith Inc.

Before TIMBERS, MESKILL and CARDAMONE, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Argyris G. Georgiadis appeals from a judgment entered November 9, 1989, 724 F.Supp. 120, in the Southern District of New York, Robert W. Sweet, *District Judge*, granting the motion of appellee Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") to compel arbitration of Georgiadis' claims in accordance with the terms of his customer agreement and to enjoin the American Arbitration Association ("AAA") from proceeding with arbitration of those claims, and denying Georgiadis' cross-motion to compel arbitration before the AAA and for summary judgment.

In his demand for arbitration before the AAA of his claim for monetary damages arising from alleged mishandling of his Merrill Lynch account, Georgiadis invoked the "AMEX Window" provision of the Constitution of the American Stock Exchange ("AMEX"), which provides that customers

have the right to arbitrate disputes before the AAA.

The district court held that the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement, and that the parties here "closed the AMEX Window" by agreement. The court also rejected Georgiadis' contention that Merrill Lynch is estopped from asserting its contractual rights under the customer agreement.

On appeal, Georgiadis contends that the district court erred in holding that the arbitration provision of the customer agreement can override the Constitution and Rules of the AMEX. He also contends that, since Merrill Lynch, in a separate case, had accepted arbitration before the AAA pursuant to the AMEX Constitution, Merrill Lynch should be estopped from denying him the right to elect AAA arbitration.

For the reasons that follow, we affirm. Much of our holding in the instant case applies to our decision today in *PaineWebber, Inc. v. Rutherford*, 903 F.2d 106 (2 Cir.1990).

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

The relevant facts are not in dispute. Georgiadis is a Greek citizen residing in Rome, Italy. He has been a customer of Merrill Lynch for 25 years. Merrill Lynch is a member firm of the AMEX, a self-regulatory organization ("SRO") which is overseen and regulated by the Securities and Exchange Commission. The AAA is a nonprofit New York corporation with its principal place of business in New York City.

In 1980, Georgiadis began to engage in options trading and signed a "Standard Options Agreement" with Merrill Lynch. Paragraph 9 of this customer agreement requires Georgiadis to select one of several arbitration fora in which to arbitrate his

claims. That arbitration provision provides:

"Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration *only before* the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed." (emphasis added).

On February 10, 1989, Georgiadis filed a demand for arbitration with the AAA, rather than one of the arbitration fora specifically designated in his customer agreement. In his claim, Georgiadis alleged that, after 25 years of investing conservatively in blue chip stocks and bonds, he was induced fraudulently to trade in put and call options and lost all of his more than $2 million portfolio in the market crash of October 1987. He asserted that Merrill Lynch and the broker who handled his account breached various statutory and common law duties, including violating § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1988), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1989).

In his demand for arbitration, Georgiadis referred to Section 2 of Article VIII of the AMEX Constitution. He thus invoked the so-called "AMEX Window" provision which provides in relevant part that:

"if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York, unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange."

On March 3, 1989, Merrill Lynch commenced an action in the Supreme Court, New York County, to stay the arbitration filed by Georgiadis with the AAA and to compel Georgiadis to arbitrate his claims before the New York Stock Exchange ("NYSE") in accordance with his customer agreement. Since Georgiadis failed to elect one of the specified arbitration fora provided in his customer agreement, Merrill Lynch was authorized under the agreement to make the election on behalf of Georgiadis and did so by electing the NYSE.

Georgiadis removed this action to the federal district court on March 13, 1989. He served his verified answer on March 16, 1989. On June 26, 1989, Merrill Lynch moved to compel Georgiadis to arbitrate before the NYSE and to enjoin the AAA from arbitrating Georgiadis' claims. On July 5, 1989, Georgiadis cross-moved to compel Merrill Lynch to arbitrate before the AAA and for summary judgment.

On October 13, 1989, the district court granted Merrill Lynch's motion, denied Georgiadis' cross-motion, and closed the AMEX Window. 724 F.Supp. 120. It held that the arbitration provision of the AMEX Constitution may be overridden by a more specific customer agreement, and that Georgiadis was required to arbitrate his claims before one of several fora named in his customer agreement. Judgment was entered November 9, 1989.

This appeal followed.

## II.

We turn first to the question whether the district court erred in holding that a specific customer agreement can supersede the AMEX Constitution regarding the choice of arbitration fora.

Georgiadis asserts that the arbitration provision of his customer agreement is unenforceable, since it conflicts with the AMEX Constitution and Rules approved by the Securities and Exchange Commission. Since his customer agreement does not provide exclusively for arbitration before the AMEX, Georgiadis contends that, under the AMEX Constitution, he has a right to arbitrate his dispute with Merrill Lynch before the AAA. We disagree. We hold that Georgiadis is bound by his customer agreement and contractually has closed the AMEX Window.

### (A)

At the outset, we observe that the Supreme Court has upheld customer agreements providing for arbitration of federal

securities claims. *Rodriguez de Quijas v. Shearson/American Express Inc.*, 109 S.Ct. 1917 (1989) (claims under Securities Act of 1933); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220 (1987) (claims under Securities Exchange Act of 1934); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) (pendent state law claims). In overruling the "outmoded presumption of disfavoring arbitration proceedings," *Rodriguez de Quijas v. Shearson/American Express Inc., supra*, 109 S.Ct. at 1920, the Court placed considerable emphasis on the Federal Arbitration Act. 9 U.S.C. § 1 *et seq.* (1988) ("the Act"). The Act, as the Court has observed, was intended "to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements *'upon the same footing as other contracts ....'* " *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510–11 (1974) (quoting H.R.Rep. No. 96, 68th Cong., 1st Sess. 1, 2 (1924)) (emphasis added). To effectuate these purposes, the Act provides that, as a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd, supra*, 470 U.S. at 218 (emphasis in original). As the Court has concluded, absent evidence that the arbitration agreement was procured through fraud or excessive economic power, we must " 'rigorously enforce agreements to arbitrate.' " *Shearson/American Express Inc. v. McMahon, supra*, 482 U.S. at 226 (quoting *Dean Witter Reynolds Inc. v. Byrd, supra*, 470 U.S. at 221).

Our task is to enforce the intent of the parties regarding arbitration absent a showing of some circumstance that would provide grounds for revocation of the customer agreement. Applying general principles of contract law, we begin our analysis with the customer agreement signed by Georgiadis. *See McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2 Cir.1980) ("ordinary principles of contract and agency determine which parties are bound by an agreement to arbitrate"); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 845 (2 Cir.1987). The language of that agreement plainly requires that disputes between the parties shall be settled by arbitration "only before" one of several designated arbitration fora: the National Association of Securities Dealers ("NASD"); the NYSE; or an Exchange located in the United States upon which listed options transactions are executed. Georgiadis makes no allegation of fraud or overreaching on the part of Merrill Lynch that would vitiate the validity of the agreement. Under ordinary contract principles, Georgiadis is bound by the arbitration provision of the agreement he signed.

### (B)

Georgiadis attempts to circumvent his customer agreement by reference to the "AMEX Window" provision of the AMEX Constitution. We shall assume, for the sake of argument, that the arbitration provision of the customer agreement conflicts with that of the AMEX Constitution. That assumption, however, does not change the result. In view of the requirements of the Act, 9 U.S.C. § 1, *et seq.*, we are constrained to enforce the plain language of Georgiadis' customer agreement.

█ We hold that the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement of the parties. Our conclusion is supported by federal case law. *E.g., Roney & Co. v. Goren*, 875 F.2d 1218 (6 Cir.1989); *Piltch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 714 F.Supp. 537 (D.D.C.1989); *Hybert v. Shearson Lehman/American Express, Inc.*, No. 84–C–10327 (N.D.Ill. June 7, 1989); *Creative Securities Corp. v. Bear Stearns & Co.*, 671 F.Supp. 961, 967 (S.D.N.Y.1987) (customer agreement "can validly modify the arbitration provisions of the NASD as they apply to the parties to such agreements"), *aff'd mem.*, 847 F.2d 834 (2 Cir.1988); *see also*

*Thomson McKinnon Securities, Inc. v. Salter,* No. 88–2035 (S.D.Fla. Dec. 16, 1988) (where customer sought arbitration before AAA after agreeing to the NASD as the arbitration forum, the court compelled NASD arbitration), *aff'd mem.,* 894 F.2d 412 (11 Cir.1990). Enforcement of the customer agreement here upholds "federal policy favoring arbitration without doing significant injury to customer freedom of choice or the [substantive] protections of the [Securities] Exchange Act [of 1934]." *Roney & Co. v. Goren, supra,* 875 F.2d at 1223. As the Sixth Circuit aptly put it:

> "When Congress enacted the Arbitration Act making arbitration agreements enforceable, it surely did not intend that the parties be able to disregard selected contractual obligations willy-nilly in order to choose an arbitral forum more convenient or more suited to a party's particular needs."

*Id.* Since there is no allegation here that the customer agreement was procured through fraud or overreaching on the part of Merrill Lynch, the parties validly have modified the arbitration provision of the AMEX Constitution. *Roney & Co. v. Goren, supra,* 875 F.2d at 1222–23; *Creative Securities Corp. v. Bear Stearns & Co., supra,* 671 F.Supp. at 967.

We are aware that, after *Roney,* the Securities and Exchange Commission issued a release which limited the holding in that decision. SEC Litigation Release No. 12198, [1989 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 84,437 (August 7, 1989). The release prohibits arbitration agreements which limit customers to a *single* SRO arbitration forum. That is not the case here, since Georgiadis had a choice of several SRO fora. Moreover, the SEC expressed no disagreement with the underlying ruling in *Roney,* i.e., that parties are free to agree to settle their disputes before particular arbitration fora.

Our decisions in *Axelrod & Co. v. Kordich, Victor & Neufeld,* 451 F.2d 838 (2 Cir.1971), and *Paine, Webber, Jackson & Curtis v. Chase Manhattan Bank, N.A.,* 728 F.2d 577 (2 Cir.1984), do not compel a different result, as Georgiadis asserts. In those cases, we recognized that the rules of a securities exchange are contractual in nature. We held that the arbitration rules of an exchange are sufficient to compel arbitration of exchange-related disputes *in the absence of a specific written arbitration agreement.* *Paine, Webber, Jackson & Curtis v. Chase Manhattan Bank, N.A., supra,* 728 F.2d at 580; *Axelrod & Co. v. Kordich, Victor & Neufeld, supra,* 451 F.2d at 841. We did not, in those cases, address the question on the instant appeal, i.e., whether a customer agreement could override the arbitration rules of an exchange member. Where, as here, the parties have agreed explicitly to settle their disputes only before particular arbitration fora, that agreement controls.

We are mindful that two New York state decisions have held that a customer agreement does not deny the customer the opportunity to submit his claim to the AAA. *PaineWebber v. Eisenstadt–Morse,* No. 8911/89 (N.Y.Sup.Ct. Aug. 17, 1989); *Cowen & Co. v. Anderson,* No. 1708/89 (N.Y. Sup.Ct. Mar. 23, 1989), *aff'd mem.,* 155 A.D.2d 243, 546 N.Y.S.2d 621 (App.Div. 1989), *appeal granted,* 75 N.Y.2d 706, 552 N.Y.S.2d 929 (1990). *But see Shearson Lehman Hutton, Inc. v. Bulubash,* No. 20205/89 (N.Y.Sup.Ct. Nov. 3, 1989) (holding that customer agreement took precedence over the AMEX Window). For the reasons stated above, we decline to follow these decisions.

We hold that the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement, and that the parties here have closed the AMEX Window by agreement.

### III.

■ Merrill Lynch was a party to *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hart,* 88 Civ. 3319 (S.D.N.Y.), in which Merrill Lynch apparently chose not to assert its contractual rights under a customer agreement which is similar to that of Georgiadis, and accepted AAA jurisdiction for purposes of that case. Georgiadis contends that, based on its conduct in *Hart,* Merrill Lynch is estopped from denying

him the right to elect arbitration before the AAA. We find this contention to be without merit.

Courts apply equitable estoppel "to preclude a party from contradicting testimony or pleadings successfully maintained in a prior judicial proceeding." *Konstantinidis v. Chen,* 626 F.2d 933, 937 (D.C.Cir.1980). "The party seeking to invoke the estoppel, however, must have been an adverse party in the prior proceeding, must have acted in reliance upon his opponent's prior position, and must now face injury if a court were to permit his opponent to change positions." *Id.* As the district court correctly held, equitable estoppel is inapplicable since "nowhere in the record is there any indication of Georgiadis' reliance on Merrill Lynch's prior position." 724 F.Supp. at 124.

■ The doctrine of judicial estoppel is equally unavailing since it applies only if the party against whom the estoppel is claimed actually obtained a judgment as a result of the inconsistent position. *Chemical Bank v. Aetna Ins. Co.,* 99 Misc.2d 803, 805, 417 N.Y.S.2d 382, 384 (N.Y.Sup.Ct. 1979). That factor is absent here, since *Hart* was dismissed voluntarily in accordance with a stipulation. *See Konstantinidis v. Chen, supra,* 626 F.2d at 939 ("success in the prior proceeding is clearly an essential element of judicial estoppel").

We hold that the doctrines of equitable and judicial estoppel do not preclude Merrill Lynch from asserting its contractual rights under the customer agreement.

#### IV.

To summarize:

We hold that the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement between the parties, and that the parties here closed the AMEX Window by agreement. We also hold that Merrill Lynch is not estopped from compelling arbitration pursuant to the customer agreement.

Affirmed.