41 F.3d 861
 Fed. Sec. L. Rep. P 98,472
 KIDDER, PEABODY & CO., INC., Plaintiff-Appellant,
v.
ZINSMEYER TRUSTS PARTNERSHIP, A Missouri General
Partnership, By Andrew Roberts Zinsmeyer dtd 7/27/64,
Jeffrey Woods Zinsmeyer Trust dtd 7/27/64, Jeffrey W.
Zinsmeyer Trust B dtd 11/29/71, Andrew R. Zinsmeyer
Revocable Trust dtd 8/27/82, Mary Jean Zinsmeyer Trust dtd
8/27/82, Andrew Zinsmeyer Trust B dtd 4/15/83, Daniel M.
Zinsmeyer Trust B dtd 2/5/85, Amy S. Zinsmeyer Trust dtd
1/19/87, Jonathan Roberts Zinsmeyer Trust B dtd 2/10/89,
Daris Zinsmeyer Education Trust dtd 12/22/82 & Jada
Partnership General Partners, William J. Reik, Jr., William
J. Reik, III & William D. Witter, Inc., Defendants-Appellees.
 
 No. 718, Docket 94-7627.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 26, 1994.
Decided Dec. 7, 1994.
 Thomas A. Dubbs, New York City, for plaintiff-appellant.
 Thomas E. Douglass, St. Louis, MO (Ellen E. Bonacorsi, Coburn & Croft, on the brief) for defendants-appellees.
 Before: WINTER, JACOBS and CABRANES, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 A general partnership composed of several family trusts has commenced two arbitration proceedings alleging the mishandling of its accounts by a brokerage firm. The brokerage firm, Kidder, Peabody & Co., Inc. ("Kidder"), commenced this action seeking a declaration that it breached no duty to the partnership and that it has no duty to arbitrate because the parties crossed out a clause of Kidder's standard-form Customer's Agreement requiring the parties to submit their disputes to arbitration. The United States District Court for the Southern District of New York (Knapp, J.) dismissed Kidder's complaint on the ground that Kidder has an obligation to arbitrate that is independent of the deleted contract term. The district court reasoned that Kidder, as a member of the National Association of Securities Dealers ("NASD"), is bound by the NASD Code to arbitrate disputes, at its customers' option, and that the crossed out language left intact a separate contract provision binding Kidder to the rules and usages of the NASD and acknowledging the existence of a pre-dispute arbitration clause.
 
 We affirm.BACKGROUND
 
 2
 In June, 1991, the Zinsmeyer Trusts Partnership ("Zinsmeyer") made arrangements to transfer a very large sum of money to Kidder for investment purposes. As part of the account opening documentation, Kidder sent Zinsmeyer its standard-form Customer's Agreement. Two paragraphs of the two-page document specifically reference arbitration. Paragraph 3 reads in relevant part:
 
 
 3
 3. I [the Zinsmeyer Trusts Partnership] UNDERSTAND THAT THIS AGREEMENT INCLUDES A PREDISPUTE ARBITRATION CLAUSE. I agree to be bound by the constitutions, rules, regulations, customs and usages of the National Association of Securities Dealers, Inc. ("NASD") and the exchanges and other markets or clearinghouses through which transactions may be effected for my account....
 
 Paragraph 16 reads:
 16. I understand that:
 
 4
 (a) ARBITRATION IS FINAL AND BINDING ON THE PARTIES.
 
 
 5
 (b) THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.
 
 
 6
 (c) PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.
 
 
 7
 (d) THE ARBITRATORS' AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.
 
 
 8
 (e) THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.
 
 
 9
 ANY CONTROVERSY BETWEEN US (INCLUDING ANY CONTROVERSY BETWEEN ME AND YOUR AGENTS, REPRESENTATIVES OR EMPLOYEES) ARISING OUT OF OR RELATING IN ANYWAY TO ANY ACCOUNTS OF OR TRANSACTIONS WITH OR FOR ME[,] OR TO THIS OR ANY OTHER AGREEMENT BETWEEN US[,] SHALL BE SETTLED BY ARBITRATION. ANY ARBITRATION BETWEEN US SHALL BE CONDUCTED BEFORE AN ARBITRATION PANEL OF, AND IN ACCORDANCE WITH THE ARBITRATION RULES THEN IN EFFECT OF, THE NASD OR OF ANY EXCHANGE OF WHICH YOU ARE A MEMBER, AS I MAY ELECT. IF YOU DEMAND THAT I MAKE SUCH AN ELECTION AND I DO NOT DO SO BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO YOU AT YOUR MAIN OFFICE IN NEW YORK CITY AND MAILED WITHIN FIVE (5) DAYS AFTER MY RECEIPT OF YOUR DEMAND, THEN YOU MAY MAKE THE ELECTION. THE AWARD OF THE ARBITRATORS, OR A MAJORITY OF THEM, SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.
 
 
 10
 On or about June 14, 1991, Zinsmeyer's managing partner mailed to Kidder a proposal that paragraph 16 be modified to refine the scope of arbitrable controversies and to designate the American Arbitration Association to serve as the forum for any disputes. Kidder rejected the proposed change and on June 21, 1991 mailed Zinsmeyer a new copy of the standard-form Customer's Agreement with paragraph 16 removed by cross-hatching. The letter from Kidder to Zinsmeyer accompanying the modified document read in part:
 
 
 11
 In lieu of attaching the amendment regarding arbitration to the Kidder, Peabody margin agreement you signed and sent to me, I have crossed out entirely the section on arbitration. This effectively waives the arbitration clause. As we need your approval to delete this section, please initial and date this adjustment and return the agreement to my attention.
 
 
 12
 (Emphasis added.) Zinsmeyer claims it did not receive this counter-proposal until June 29, 1991. By that time, several trades had already been made with the Zinsmeyer funds. Kidder informed Zinsmeyer that the agreement needed to be signed immediately, and back-dated to prevent the trades from being reversed. A representative of Zinsmeyer back-dated and initialed the agreement as modified by Kidder on July 2, 1991.
 
 
 13
 As a member of the NASD, Kidder is bound by the NASD Code. Section 12 of the NASD Code requires members to submit to arbitration at the request and option of its customers.
 
 
 14
 In July 1993, Zinsmeyer commenced arbitration proceedings before the American Arbitration Association ("AAA"), alleging that Kidder mishandled Zinsmeyer's funds in violation of various provisions of federal securities law including section 10(b) of the Securities Exchange Act and section 206 of the Investment Advisors Act of 1940. Kidder resisted arbitration and filed this declaratory judgment action on December 8, 1993. In February 1994, Zinsmeyer commenced another arbitration proceeding, this one before the NASD, asserting claims identical to the ones raised in the AAA proceeding.
 
 
 15
 On May 20, 1994, Judge Knapp conducted a hearing on Zinsmeyer's motion to dismiss the complaint or, in the alternative, to compel arbitration. The district court granted the motion for dismissal from the bench at the end of the hearing, relying upon the text of paragraph 3. Judge Knapp concluded that the NASD Code is incorporated in paragraph 3, and that Section 12 of that Code gives customers the power to elect arbitration by the NASD. According to Judge Knapp, the excision of paragraph 16 "in no way affect[ed] paragraph 3." Paragraph 3 therefore compels the brokerage house to submit to arbitration in accordance with the arbitration provision of the NASD Code. Judge Knapp further found that the parties had not done "anything to suggest" that they wished to contract out of the requirements imposed on them by the NASD Code.
 
 DISCUSSION
 
 16
 The district court's ruling is based on "pure textual construction" of a contract. Appellate review is therefore de novo. Bellefonte Reinsurance Co. v. Aetna Casualty & Sur. Co., 903 F.2d 910, 912 (2d Cir.1990).
 
 
 17
 The cross-hatching that excised paragraph 16 left intact paragraph 3 of the Customer's Agreement. Paragraph 3 recites that the Zinsmeyer Trust Partnership agrees "to be bound by the constitutions, rules, regulations, customs and usages of the National Association of Securities Dealers, Inc. ('NASD')." The NASD code guarantees that the customer has the right to demand arbitration:
 
 
 18
 Any dispute, claim or controversy eligible for submission ... between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.
 
 
 19
 NASD Code, Sec. 12(a) (emphasis added).
 
 
 20
 As a member of the NASD, Kidder is bound to adhere to the organization's rules and regulations. Scobee Combs Funeral Home, Inc. v. E.F. Hutton & Co., Inc., 711 F.Supp. 605, 606 (S.D.Fla.1989); Drexel Burnham Lambert, Inc. v. Pyles, 701 F.Supp. 217, 220 (N.D.Ga.1988). "[T]he rules of a securities exchange are contractual in nature." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis, 903 F.2d 109, 113 (2d Cir.1990); see also Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A., 728 F.2d 577, 580 (2d Cir.1984) (the arbitration rules of the New York Stock Exchange can be binding on NYSE members). Like the NYSE rules at issue in Paine, Webber, the NASD rules and regulations include, through section 12, the duty to submit to arbitration upon a customer's demand. As such, the NASD provision constitutes an "agreement in writing" under the Federal Arbitration Act, 9 U.S.C. Sec. 2. See Oppenheimer & Co., Inc. v. Neidhardt, No. 93-civ-3854, 1994 WL 176976, at * 1 (S.D.N.Y. May 5, 1994). Zinsmeyer is entitled to invoke Sec. 12(a), as an intended third-party beneficiary, in its dispute with Kidder. See Scobee, 711 F.Supp. at 607. Paragraph 3 of the Customer's Agreement simply affirms that option by incorporating the NASD Code by reference. It is well established that an agreement to arbitrate may be incorporated by reference into a second contract. See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 48 (2d Cir.1993) (insurance contract incorporated by reference arbitration agreement contained in separate document).
 
 
 21
 Kidder's reply brief argues that, under Georgiadis, parties are free to contract out of the NASD rules. Georgiadis affirms that if the rules of an exchange (or similar organization) require arbitration of customer disputes, a broker's membership obligation confers upon the customer an option to arbitrate as the exchange rules provide. 903 F.2d at 113. Georgiadis holds, however, that the constitution of the exchange "may be superseded by a more specific customer agreement...." Id. at 112. Georgiadis, which gave effect to the parties' contractual choice of arbitral fora, does not consider the broader issue of whether a customer can waive entirely the option to arbitrate conferred by the broker's exchange membership obligations. We do not consider that issue either, because Kidder fails to demonstrate that there is "a more specific customer agreement" to override Kidder's duty to arbitrate under the NASD Code.
 
 
 22
 Kidder contends that the deletion of paragraph 16 must be construed to eliminate any duty to arbitrate, and that the act of striking the paragraph otherwise would carry no meaning. Since contracts should be read so as to give meaning to each provision, see Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir.1985); L.G.B. Inc. v. Gitano Group, Inc., 769 F.Supp. 1243, 1246 (S.D.N.Y.1991), Kidder argues that Judge Knapp gave insufficient weight to the parties' elimination of the arbitration clause in paragraph 16. This argument is defective for several reasons.
 
 
 23
 Structurally, as Georgiadis makes clear, different or additional contractual arrangements for arbitration can supersede the rights conferred on the customer by virtue of the broker's membership in a self-regulating organization such as the NASD. Georgiadis, 903 F.2d at 113. The elimination of such a superseding clause, however, does not signify an intention to erase a pre-existing obligation. The recitals in paragraph 3 recognize the NASD obligations and rules that confer upon customers the option to arbitrate.
 
 
 24
 Kidder incorrectly assumes that, as originally drafted, the arbitration arrangements contemplated by paragraphs 3 and 16 are so similar in operation that the deliberate striking of paragraph 16 unambiguously signifies a contractual rejection of arbitration. The two paragraphs perform different functions, however. Paragraph 3 acknowledges the application of NASD rules, one of which confers upon the customer a unilateral option to compel arbitration, a very advantageous power. Paragraph 16, unlike paragraph 3, creates a mutual right to demand arbitration, and creates a choice of forum rather than the single NASD forum provided by paragraph 3. In the absence of paragraph 16, Kidder would have no right to compel Zinsmeyer to arbitrate. Therefore, a customer's rejection of paragraph 16 does not evidence a clear intent to waive the customer's arbitration right that exists independent of the Customer's Agreement and that is in fact acknowledged in it.[1]
 
 
 25
 Finally, Kidder urges that we construe the striking of paragraph 16 together with the letter by which Kidder transmitted the revised version of the Customer's Agreement to Zinsmeyer. The transmittal letter recites that the crossing out of paragraph 16 is done "in lieu of" the AAA clause proposed by Zinsmeyer, adding: "This effectively waives the arbitration clause." When a contract is plain on its face, there is no need to resort to an examination of extrinsic evidence. International Klafter Co. v. Continental Casualty Co., 869 F.2d 96, 100 (2d Cir.1989). The cases cited by Kidder merely establish that various contracts executed simultaneously should be read together. Here, however, there is only one contract--the Customer's Agreement. There is no reason to incorporate the transmittal letter into the contract. Because we find that there is no ambiguity in the final version of the Customer's Agreement, we have no need to examine any external communications between the parties. Id.
 
 
 26
 Even if we deemed the transmittal letter to be part of the contract, the sentence on which Kidder relies does not illuminate the parties' intention in the way Kidder contends. The word "[t]his" refers either to the crossing out referenced in the prior sentence or to the revised agreement as a whole. The term "arbitration clause," being singular, evidently refers to paragraph 16, which was the whole focus of the parties' negotiation; the sentence therefore does not concern paragraph 3, and could not affect the rights and obligations that paragraph 3 references. In any event, if the transmittal letter raised an ambiguity that is not apparent on the face of the contract, we would construe any such ambiguity in favor of arbitration. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983).
 
 CONCLUSION
 
 27
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 A customer may view paragraph 3 as more advantageous than paragraph 16. Paragraph 16 gives Kidder the power to designate as the arbitral forum any exchange of which it is a member if the customer fails to make that designation within five days of receiving a notice to arbitrate from Kidder. The provision does not say if weekends and holidays are counted as days, or what constitutes receipt. Paragraph 16 thus gives the customer little opportunity to retain and consult counsel and designate a forum