**WALL STREET ASSOCIATES, L.P., Plaintiff,**

v.

**BECKER PARIBAS, INCORPORATED, Merrill Lynch & Company, Michael Wise, Monroe Friedman, Securities & Arbitrage Co. and Wall Street Arbitrage Co., Defendants.**

No. 85 Civ. 4649 (LBS).

United States District Court, S.D. New York.

April 28, 1993.

---

Reid & Priest, New York City (Robert S. Carlson, Lawrence S. Hirsh, Susan L. Bedford, of counsel), for plaintiff.

Lankler Siffert & Wohl, New York City (Frank Wohl, David C. Esseks, of counsel), for defendants Wise and Friedman.

Brown & Wood, New York City (Roger J. Hawke, Daniel A. Osborne, of counsel), for defendants Becker Paribas, Inc. and Merrill Lynch & Co.

## OPINION

SAND, District Judge.

This case is before the Court on plaintiff's motion to confirm and defendants' motions to vacate an award entered by the American Arbitration Association ("AAA") on November 9, 1992 after a protracted arbitration. We find that defendants have not demonstrated either that the arbitration panel exceeded the scope of its authority or that it acted in manifest disregard of the law, and we therefore confirm the award.

### The Parties

Plaintiff, Wall Street Associates, L.P. ("WSA") is a Delaware limited partnership which was formed in 1981 by defendants Michael Wise and Monroe Friedman, who acted as its managing general partners. The business of WSA involves trading and market making activity in options and securities. In October, 1982, WSA lost approximately $8.7 million, virtually all of the assets of the company, on the stock and stock options markets. Defendant Becker Paribas, Inc. was the clearing broker for WSA, and Merrill Lynch & Co. is Becker's corporate successor (collectively referred to as "Becker"). The other defendants, Wall Street Arbitrage Co. ("WARCO") and Securities & Arbitrage Co. ("SARCO"), are two more limited partnerships of which Wise and Friedman are the general partners.

The facts underlying this action were set out in detail in a prior opinion of this Court, familiarity with which is presumed. *See, Wall Street Associates. L.P. v. Becker Paribas et al.,* 1986 WL 10479 (S.D.N.Y.1986).

### Procedural Background

We briefly summarize the procedural background, as it is relevant to the first argument made by Wise and Friedman in support of their motion to vacate the award.

In 1985 plaintiff commenced this action, charging defendants with fraud under the Securities Exchange Act of 1934, common law fraud, conversion, breach of fiduciary duty and negligence. On August 5, 1985 plaintiff served an amended complaint which added a cause of action under RICO.

Shortly after the complaint was filed, defendant Becker moved for an order staying the action and directing the parties to arbitrate the controversy. Becker's motion named four arbitral bodies before which it alleged that WSA and Becker were obligated to arbitrate: the Philadelphia Stock Exchange, the Chicago Board Options Exchange, the National Association of Securities Dealers, Inc. and the New York Stock Exchange, Inc.

In its motion seeking arbitration, Becker also acknowledged and attached three separate contracts between WSA and Becker, including a guaranty agreement dated September 16, 1982 whereby WSA agreed to guaranty the account of WARCO at Becker. That guaranty contained an arbitration clause specifying that any controversy between WSA and Becker arising out of or relating to the contract would be settled by either the Arbitration Committee of the Chamber of Commerce of the State of New York, the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange. Wise and Friedman, appearing *pro se* at that time, joined in Becker's motion to compel arbitration.

At a hearing on September 19, 1985 this Court granted defendants' motion to stay the litigation and directed arbitration, without specifying which arbitral body should preside. On September 27, 1985 plaintiff commenced an arbitration proceeding before the American Arbitration Association based on the arbitration clause in the guaranty agreement noted above.

On October 17, 1985 defendants Wise, Friedman, SARCO and WARCO moved to stay the arbitration initiated by plaintiff before the AAA and asked the Court to direct that the arbitration proceed before the NASD. On November 14, 1985, after having heard oral argument, we denied the motion by endorsement. No transcript was made of the hearing on the motion.

Subsequently, the Court heard motions addressed to the arbitrability of plaintiff's RICO claim. On September 12, 1986, the Court dismissed the RICO claim, in the opinion cited *supra*, based in part on our finding

that the plaintiff had not adequately alleged an injury to the limited partnership in connection with the purchase or sale of securities under Rule 10(b)(5). In this regard, it appeared to the Court that plaintiff was attempting to base its securities fraud claim against the general partners, at least to some degree, on material misstatements and failure to disclose material facts in the offering memoranda. We suggested in our opinion that such a claim would be improper, since the partnership would not have standing where the injury in connection with the purchase of securities was an injury to the limited partners, who were allegedly fraudulently induced to invest in WSA, and not an injury to the partnership.

By letter dated April 21, 1987, counsel for Wise and Friedman urged the Court to reconsider the decision to allow the arbitration to proceed before the AAA, on grounds substantially similar to those which will be discussed below. We denied that request. No application for appellate review of this Court's direction to proceed to arbitration before the AAA was made.

Arbitration hearings were conducted by a three member panel of the AAA over a five-year period, generating voluminous testimony and exhibits. The panel consisted of a certified public accountant, an investment banker, and a commercial lawyer. On November 9, 1992, the arbitrators issued an award, *without opinion,* in favor of plaintiff against defendant Becker for $1,522,500 plus Becker's share of the administrative fees and expenses of the AAA. The award also granted plaintiff damages of $6,090,000 against defendants Wise and Friedman, plus their share of the administrative fees and expenses of the AAA, jointly and severally, on a finding that they were guilty of willful misconduct. The award against Wise and Friedman was reduced by 12.5%, the share which would have gone to Gerald Blank. Blank is currently 50% owner of the general partner of WSA, and was formerly an employee of WSA who was allegedly involved in the preparation of the misleading memoranda. No findings were made against WARCO or SARCO.

After the decision was rendered, plaintiff moved to confirm the award in state court in New York. After some further motion practice, the proceeding was removed to this Court. We heard extensive oral argument on February 22, 1993, and our decision follows.

### Discussion

■ We note at the outset the oft-stated federal policy, embodied in the Federal Arbitration Act, 9 U.S.C. § 1 et seq., favoring the enforcement of arbitration agreements and the confirmation of arbitration awards. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). With this mandate in close focus, we first address the argument advanced only by Wise and Friedman, and then the other two arguments which are advanced on behalf of Wise, Friedman and Becker.

### I.

A. *Wise and Friedman's argument that they did not agree to arbitrate before the AAA:*

Defendants Wise and Friedman strenuously argue that they never agreed to arbitrate with WSA before the AAA, and because they did not agree to that particular forum, we must vacate the arbitration award. Although apparently recognizing that the decision to allow the arbitration to proceed before the AAA is the law of the case, defendants argue that *decisions rendered after our opinion* constitute an intervening change in the law that should alter that result.

We need not determine whether Wise and Friedman did or did not in fact agree to arbitrate before the AAA, because we do not find that subsequent case law in any way alters our decision in 1985 in which we allowed the arbitration to proceed before the AAA. We look first at the basis for defendants' argument, and then at the law which governs this question.

Defendants point to the language of the guaranty, which by its terms is an agreement

between the guarantor, WSA, and the clearing broker, Becker, to arbitrate disputes relating to the guaranty. Defendants argue that even if the dispute between Friedman and Wise and WSA can be viewed as related to the guaranty, the agreement does not obligate them, the general partners, to arbitrate against the limited partnership.

In response, plaintiff argues that as a matter of partnership law, because the general partners signed the guaranty on behalf of the partnership, the general partners are bound to arbitrate. Furthermore, plaintiff argues that by joining defendant Becker's motion to compel arbitration, in which Becker acknowledged its obligation to arbitrate before the AAA under the guaranty, defendants Wise and Friedman also obligated themselves to arbitrate before the AAA.

 Assuming for the purposes of this motion only that defendants Wise and Friedman did not agree to arbitrate before the AAA, we nonetheless find no basis for vacating the award on that ground. The determination that the AAA had jurisdiction over Wise and Friedman to hear this controversy is the law of the case. The law of the case doctrine requires that courts adhere to their own decisions rendered at an earlier stage of the litigation unless there are cogent or compelling reasons not to, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir.1990). We are unconvinced by defendants' argument that an intervening change in the controlling law renders our prior decision incorrect.

Defendants rely on three cases: *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir.1990); *Paine-Webber, Inc. v. Rutherford*, 903 F.2d 106 (2d Cir.1990); and *Roney & Co. v. Goren*, 875 F.2d 1218 (6th Cir.1989). Defendants argue that these cases establish that where a party does not agree to arbitrate before a particular forum, that forum does not have jurisdiction. The facts surrounding the arbitration agreements in those cases, as well as their procedural posture, distinguish them from the case at hand.

It is true, as defendants argue, that the three cases stand for the proposition that an agreement to arbitrate before a particular forum is as integral a term of a contract as any other, which courts must enforce. However, in all three cases, the parties had agreed to a particular forum in contracts before the dispute arose, and then one party sought to arbitrate in another forum. For example, in *Georgiadis*, the plaintiff, a customer of Merrill Lynch, had signed a customer agreement which provided for arbitration before the NASD or the New York Stock Exchange. The plaintiff filed for arbitration before the AAA, based on a provision of the American Stock Exchange Constitution, which provided that customers could elect to arbitrate before the AAA.

The Second Circuit held that the arbitration provision of the American Stock Exchange Constitution was superseded by the arbitration provision in the customer agreement. In other words, where the parties have specifically agreed by contract to arbitrate in a particular forum, that agreement will take precedence over the general rules providing for arbitration in fora of different organizations of which the parties are members. Analogous factual circumstances underlie the other two cases.

The case before this Court is factually quite different. Because the parties present two interpretations of the facts surrounding the arbitration agreements, we will discuss both alternatives. According to defendants, there was no specific agreement between Wise and Friedman and WSA to arbitrate before the AAA; there were only the general agreements to arbitrate under the rules of the various exchanges. If that is true, then the cases cited above, which control in the situation where there is a specific agreement that is in conflict with a general agreement, are inapposite. According to plaintiff, there was a specific agreement in the guaranty to arbitrate before the AAA, and therefore, under the cases discussed above, that specific agreement should take precedence over any general agreements of the exchanges. Regardless of which version of the facts is adopted, jurisdiction of the AAA is not defeated by the later case law.

The second difference, and perhaps the crucial one between the three cases and the one before this Court, lies in their procedural posture. In all three cases, the appeal from the district court's decision directing the parties to arbitrate before a given forum occurred *prior* to the arbitration. In this case, the arbitration has already occurred, and in fact took place over a five year period. None of the cases cited supports the proposition that a court should overturn a lengthy, completed arbitration because the parties, although agreeing to arbitrate, did not agree on the particular forum.

Finally, plaintiff argues that even if the arbitration should not have gone forward before the AAA, defendants have not shown that they were prejudiced in any way. We agree. Defendants cannot demonstrate prejudice merely because they lost. Certainly there can be no doubt that had defendants won, the question of the appropriateness of the AAA as the forum would not be before us.

## II.

The crux of defendants' remaining arguments is this: plaintiff, the limited partnership, argued to the arbitration panel that Friedman, Wise and Becker defrauded the limited partners through the offering memoranda. This was a fraud allegedly perpetrated against the limited partners, a claim which the limited partnership had no standing to raise. Therefore, defendants argue, in ruling for the plaintiff, the arbitration panel both exceeded its authority by considering matters unrelated to the guaranty, and acted in manifest disregard of the law. Although these arguments are really two sides of the same coin, we will address them separately as the parties have done.

B. *Defendants' argument that the AAA lacked jurisdiction because the claims did not relate to the guaranty:*

Defendants argue that the award must be vacated pursuant to § 10(a)(4) of the Arbitration Act because none of the claims presented to the arbitrators related to the guaranty, and therefore the arbitrators exceeded the scope of their authority, which extended only to controversies arising out of or related to the guaranty.

■ Defendants' basis for this argument is that the guaranty standing alone could not have caused any damage to the plaintiff, because the plaintiff admitted during the arbitration that no money was ever drawn on the guaranty. In other words, defendants argue that the only way the plaintiff could have been injured by guaranteeing the account of WARCO was for Becker to call on plaintiff to pay on WARCO's behalf, and that never happened. Defendants conclude from this that any award to plaintiff could not have been related to the guaranty, and therefore the panel must have acted beyond its power.

As the Second Circuit has consistently stated, "if an arbitrator offers even a barely colorable justification for his decision, we will not vacate it on the basis of a claim that he exceeded his authority by misinterpreting the parties' contract." *United States Steel and Carnegie Pension Fund v. Dickinson,* 753 F.2d 250, 252 (2d Cir.1985). We believe that defendants have taken too narrow a view both of plaintiff's claims and of the term "related to" in the arbitration clause of the guaranty. The Second Circuit in *Rochdale Village, Inc. v. Public Service Emp.,* 605 F.2d 1290, 1295 (2d Cir.1979) explained:

Arbitration clauses are to be construed broadly, and there is "a strong presumption favoring arbitrability." *Nolde Bros., Inc. v. Local 358,* 430 U.S. 243, 254 [97 S.Ct. 1067, 1073, 51 L.Ed.2d 300] (1977). The application of this policy is clearest when a party asserts that a particular type of claim falls outside the scope of an arbitration clause. In such cases, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83 [80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409] (1960).

The cases cited by Becker in its brief are inapposite on this point, because they all deal with the situation where the arbitration agreement or governing law prohibits the arbitration panel from awarding a certain type of damages or fashioning a certain type of remedy, and the board ignores that contractual limitation. *See, Fahnestock & Co. v. Waltman*, 935 F.2d 512, (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991); *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117 (2d Cir. 1991); *Collins & Aikman Floor Coverings v. Froehlich*, 736 F.Supp. 480 (S.D.N.Y.1990). The arbitration panel here was not similarly limited.

Defendants characterize the arbitration clause as a narrow one, covering only certain types of disputes. However, the clause by its very terms covers any dispute arising out of or related to the contract or the breach thereof. Plaintiff's claims, although not resting solely on the guaranty, do relate to the guaranty. Plaintiff has conceded that no funds were transferred under the guaranty. However, plaintiff alleges that through this guaranty, and other cross-guaranties among the three partnerships of which Wise and Friedman were the general partners, the defendants were able to treat the three partnerships as one entity. By doing so, plaintiff alleges, the defendants were able wrongfully to magnify the leverage with which they traded the account of WSA, thus enabling the huge losses sustained by WSA.

Defendants allege that plaintiff abandoned the guaranty argument in the Third Amended Claims. However, plaintiff pleaded this theory of recovery in a number of places, for example at ¶ 66 of the Third Amended Claims:

> Since the Wall Street Associates' cross-guaranty of Wall Street Arbitrage meant that Wall Street Associates was also guarantying the accounts of SARCO, the effect was that Wise and Friedman, with Becker's assistance, could utilize Wall Street Associates' capital on behalf of SARCO, and SARCO's capital on behalf of Wall Street Associates. As a result, Wise and Friedman had increased the leverage in all three entities, and gave them the opportu-

nity to put on more positions than they would have otherwise have been permitted.

Whether or not this theory is a sound one, or whether the arbitrator may have made a mistake in granting an award based on such a theory, the claim is "related to" the guaranty contract. Similarly, the claim of breach of fiduciary duty is related to the guaranty, as is the claim of conversion of funds from WSA related to the guaranty and the cross-guaranties.

As we stated at the outset of this discussion, any claim regarding the offering memoranda and failure to disclose material facts of the plaintiff's track record to the limited partners is clearly unrelated to the guaranty, and should not have been argued. But, as we will discuss below, unless it is demonstrated that such claim was the basis of the award, the bare fact that the arbitrators heard the claim is not enough to vacate the award on the ground that the arbitrators exceeded the scope of their authority.

C. *Defendants' argument that the arbitrators acted in manifest disregard of the law:*

Defendants' final argument is that the arbitration panel acted in manifest disregard of the law when it awarded damages to plaintiff, because the award was to compensate the injury done to the limited partners and not to the limited partnership. Defendants base their interpretation of the award, which is at best speculation, on the fact that the arbitrators reduced the award by the share that would have gone to Gerald Blank, WSA's principal salesman of the limited partnership interests. Blank currently owns 49% of a company called Griffin Arbitrage, which is the successor general partner of WSA.

Defendants explain that Mr. Blank was proven to have put together the deceptive offering memoranda, and since the arbitrators did not want Mr. Blank to share in the award, the award must have been based on the fraud perpetrated against the limited partners in connection with the offering memorandum. Because plaintiff would not have standing to raise the claim on behalf of the limited partners, defendants conclude that the arbitrators acted in manifest disre-

gard of the law when they ruled in favor of plaintiff. *See, Storage Technology Partners II v. Storage Technology Corp.*, 117 F.R.D. 675, 682 (D.Col.1987); *Glusband v. Fittin Cunningham Lauzon, Inc.*, 582 F.Supp. 145, 149 (S.D.N.Y.1984).

 The burden of proving that the arbitrators acted in manifest disregard of the law is an extremely high one, especially where, as here, numerous legal theories are presented to a panel, and the award is rendered without opinion. Defendants state that they requested that the arbitrators issue an opinion which would explain the basis of the award. However, as the Second Circuit recently reaffirmed in *Fahnestock & Co., Inc. v. Waltman, supra* at 516.

> [I]t is axiomatic that arbitrators need not disclose the rationale for their award. [Citations omitted.] "[I]f a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972).

In *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933–34 (2d Cir.1986), the Second Circuit set out the standard for when an arbitration panel acts in "manifest disregard of the law." The court explained:

> "Manifest disregard of the law" by arbitrators is a judicially-created ground for vacating their arbitration award, which was introduced by the Supreme Court in *Wilko v. Swan*, 346 U.S. 427, 436–437 [74 S.Ct. 182, 187–188, 98 L.Ed. 168] (1953). It is not to be found in the federal arbitration law. 9 U.S.C. § 10. Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. [citations omitted]. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it. [citation omitted] ... Judicial inquiry under the "manifest disregard" standard is therefore extremely limited. The governing law alleged to have been ignored must

be well defined, explicit, and clearly applicable.

Defendants argue that the arbitration panel ignored the well-defined, clearly applicable legal principle prohibiting a limited partnership from suing under 10(b)(5) for fraud perpetrated by the general partners on the limited partners in connection with the purchase of limited partnership interests. To succeed in this argument however, it is not only incumbent upon the defendants to prove that the law is well-defined and clearly applicable; it is also necessary to demonstrate that the arbitration panel ignored the law and based its decision on this error. For if the panel understood this legal principle, and ruled for plaintiff on an alternative ground, we would have no basis for vacating the award.

 Defendants' strongest argument that the arbitrators' decision was predicated on an erroneous application of the law is that plaintiff presented, as a key argument, evidence of a fraud on the limited partners in connection with the offering memoranda. Plaintiff is therefore put in the anomalous position of simultaneously admitting that it made an argument and trying to persuade the Court that the argument was rejected by the panel.

Because the plaintiff made this argument we have subjected the panel's decision to closer scrutiny than would otherwise be appropriate in light of the existing law. Moreover, despite the strong presumption in favor of confirming arbitration awards, we would not hesitate to set this award aside if we were convinced that the decision was in fact predicated on an erroneous argument which was inconsistent with a prior ruling of the Court. This is a serious risk which plaintiff incurred.

Nevertheless, we find that defendants have not demonstrated to the Court's satisfaction that the award was based on impermissible grounds. Defendants argue that the panel must have understood but ignored the law because it allowed the plaintiff, over defendants' repeated objection, to present evidence and argument regarding the fraud on the limited partners. However, the mere fact that the evidence was presented does not

lead to the conclusion that the panel based its decision on this improper theory.

Defendants' argument that the true nature of the award is evidenced by the reduction intended to deprive Mr. Blank of his share is certainly a reasonable possibility. However, it appears to the Court that an equally plausible rationale is that the panel, understanding that any award to the limited partnership, on whatever legal theory, would devolve on Blank as general partner, decided not to benefit an individual who the evidence suggested had participated in a fraud on the limited partners. Plaintiff also argues that if the arbitrators were trying to give an award only to the limited partners, the panel would have similarly deducted, which it did not do, the share which would go to the 51% owner of Griffin, Randy Smith.

Defendants further argue that the amount of the award represents rescission of the limited partners' investment and therefore must be an award to the limited partners. Plaintiff counters that the award, before the 12.5% reduction, represents the investment plus the profits earned on the investment by WSA, and therefore is an award to the limited partnership. What is evident is that neither side can conclusively say what the ground of the award was, but the facts suggest that grounds other than the fraud on the limited partners can justify the award. Therefore, we cannot determine that the panel acted in manifest disregard of the law, and the award must be confirmed.

### Conclusion

For the foregoing reasons, the arbitration award in favor of plaintiff is confirmed. The Clerk of the Court shall enter judgment on behalf of the plaintiff in the amounts set forth in the arbitration award plus interest from the date on which the award was to have been paid, which was January 8, 1993.

SO ORDERED.