27 F.3d 845
 Fed. Sec. L. Rep. P 98,251
WALL STREET ASSOCIATES, L.P., Plaintiff-Appellee,
v.
BECKER PARIBAS INCORPORATED, Merrill Lynch & Company, Monroe
Friedman and Michael Wise, Defendants-Appellants,
Securities & Arbitrage Co. and Wall Street Arbitrage Co., Defendants.
 Nos. 688, 704 and 705, Dockets 93-7567, 93-7635 and 93-7667.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 23, 1993.
Decided June 28, 1994.
 
 Edward Brodsky, New York City (Proskauer, Rose, Goetz & Mendelsohn, Robert S. Carlson, Lawrence S. Hirsh, Susan L. Bedford, Reid & Priest, of counsel), for plaintiff-appellee.
 David C. Esseks, New York City (Frank H. Wohl, Lankler, Siffert & Wohl, of counsel), for defendant-appellant Monroe Friedman.
 David C. Segal, New York City (June Diamant, Sukenik, Segal & Graff, P.C., of counsel), for defendant-appellant Michael Wise.
 Roger J. Hawke, New York City (Daniel A. Osborn, Brown & Wood, of counsel), for defendants-appellants Becker Paribas Inc. and Merrill Lynch & Co.
 Before: MESKILL, ALTIMARI, and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 Defendants-appellants Becker Paribas, Inc. ("Becker Paribas" or "Becker"), Merrill Lynch & Company, Michael Wise, and Monroe Friedman (collectively, the "Defendants") appeal from a judgment of the United States District Court for the Southern District of New York (Leonard B. Sand, Judge ), confirming an arbitration award entered in favor of plaintiff-appellant Wall Street Associates, L.P. ("WSA"). On appeal, the Defendants contend that the arbitration panel exceeded its powers by rendering a decision in WSA's favor based upon a theory of liability that had been previously dismissed from the case, and which was beyond the scope of the agreement defining the panel's authority. In addition, Wise and Friedman argue that they never consented to arbitrate before the American Arbitration Association ("AAA"), and therefore were not subject to that body's jurisdiction.
 
 
 2
 The district court confirmed the award as to all defendants-appellants. Wall St. Assocs., L.P. v. Becker Paribas, Inc., 818 F.Supp. 679 (S.D.N.Y.1993). We affirm.
 
 BACKGROUND
 
 3
 WSA is a Delaware limited partnership formed in May 1981 to engage in trading and market-making activities in security options and the underlying securities. Defendants Wise and Friedman were WSA's founders and managing general partners. In October 1981, WSA entered into a clearing agreement with defendant Becker Paribas pursuant to which Becker Paribas served as WSA's clearing agent, and also as a lender on WSA's margin trading. Becker Paribas also acted as clearing broker and margin lender for two other partnerships founded and managed by Wise and Friedman, Securities & Arbitrage Co. ("SARCO") and Wall Street Arbitrage Co. ("WARCO"). SARCO and WARCO, formed to engage in high risk arbitrage trading, pursued considerably more aggressive investment policies than those followed by WSA.
 
 
 4
 In October 1982, WSA lost nearly all of its capital, approximately $8.7 million. In 1985, WSA sued Wise, Friedman, SARCO, WARCO, Becker Paribas, and Merrill Lynch & Co., Becker Paribas's successor in interest, claiming securities laws violations, breach of fiduciary duties, common law fraud, conversion, and negligence. The complaint alleged that Wise and Friedman, with Becker Paribas's assistance, fraudulently commingled funds belonging to WSA with funds in the accounts of SARCO and WARCO to cover margin positions. The complaint also charged the Defendants with obtaining loans for SARCO and WARCO by improperly grouping, for risk assessment purposes, WSA's relatively low risk accounts with SARCO's and WARCO's high risk arbitrage accounts. Without the inclusion of WSA's accounts in the risk calculus, the loans could not have met Becker Paribas's own internal lending criteria.
 
 
 5
 The complaint further alleged that WSA's losses resulted not from trading conducted on WSA's behalf, but rather from an improper pledge of WSA's assets in the form of "Guaranty Agreements" covering losses suffered by SARCO and WARCO. WSA maintains that Wise and Friedman had no authority to enter into the Guaranty Agreements on WSA's behalf and that doing so was an improper use of WSA's assets. Under the Guaranty Agreements, when the stock market took an unfavorable turn in October 1982 and Becker Paribas liquidated the unhedged positions of the three partnerships, Wise and Friedman were able to allocate losses to WSA that were attributable to SARCO and WARCO.
 
 
 6
 The Guaranty Agreements contained a clause permitting arbitration before the American Arbitration Association ("AAA"). The arbitration clause provided:
 
 
 7
 Any controversy between you [Becker Paribas] and the Guarantor [WSA] arising out of or relating to this contract or the breach thereof shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the Guarantor may elect....
 
 
 8
 Shortly after WSA's complaint was filed, Becker Paribas moved to stay the proceedings and for an order directing the parties to arbitration. Becker Paribas attached one of the Guaranty Agreements, along with five other agreements in support of arbitration, to its motion. Wise and Friedman, then pro se, each joined in Becker's motion. In September 1985, the district court granted the motion and ordered the parties to proceed to arbitration.
 
 
 9
 WSA thereafter commenced an arbitration proceeding against the defendants before the AAA, one of the fora listed in the Guaranty Agreement appended to Becker's motion. Wise, Friedman, SARCO, and WARCO, all now represented by counsel, moved to stay the arbitration. They argued that they never consented to arbitrate before the AAA, and moved for an order directing arbitration before the National Association of Securities Dealers. The district court denied the motion without opinion.
 
 
 10
 Previous to the commencement of the arbitration proceeding, WSA had filed an amended complaint which added a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Sec. 1964(c). Before the AAA arbitration began, the district court granted a motion by the defendants to dismiss this count. Wall Street Assocs., L.P. v. Becker Paribas Inc., No. 85 CIV 4649 (LBS), 1986 WL 10479 (S.D.N.Y. Sept. 12, 1986). The court found that the fraud alleged constituted a single scheme and therefore did not satisfy RICO's requirement of a "pattern" of racketeering activity. Id. at * 4-* 5. The court also expressed doubt as to whether WSA had stated a claim for injury to the partnership, as opposed to an injury to the investing limited partners which WSA would not have standing to assert. Id.
 
 
 11
 at * 3. With the RICO claim out of the case, the arbitration before the AAA proceeded on WSA's remaining claims.
 
 
 12
 The arbitration continued intermittently for the next five years. On November 9, 1992, the panel awarded WSA more than $7.5 million in damages, with approximately $1.5 million to be borne by Becker Paribas, and with Wise and Friedman jointly and severally liable for the remainder. No separate findings were made as to the liability of SARCO or WARCO and they have not appealed. WSA moved for confirmation of the award and the Defendants cross-moved for vacatur of the award because the arbitrators allegedly exceeded their powers. The district court confirmed the award as to all defendants. This appeal followed.
 
 DISCUSSION
 I. Propriety of the Arbitrators' Award
 
 13
 On appeal, the Defendants contend that the award should be vacated because the arbitrators exceeded their powers under the arbitration clause contained in the Guaranty Agreements. Specifically, they contend that although the arbitrators did not provide the basis for their award, the circumstances surrounding the award show that it was grounded on the impermissible theory of fraud against WSA's limited partners. They argue that the panel exceeded its authority by entertaining this theory because the district court disapproved it when it dismissed the RICO claim, and because it went beyond the scope of arbitral claims permitted by the arbitration clause.
 
 A. The Burden of Proof
 
 14
 As a threshold matter, the Defendants contend that since WSA attempted to advance the fraud on the limited partners theory before the arbitrators, the burden should, as a matter of policy, shift to WSA to show that the award was not tainted by WSA's improper arguments. Accepting for the moment that WSA pursued an improper line of argument before the panel, the Defendants' contention that WSA now must justify the award to obtain confirmation is without merit.
 
 
 15
 The question of who bears the burden of challenging an arbitration award is resolved by resort to Sec. 10(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. Sec. 10(a), and by the policy favoring confirmation of arbitration awards. In Sec. 10(a) Congress provided that:
 
 
 16
 In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration.... (emphasis added).
 
 
 17
 Among the grounds then specified in Sec. 10(a) for which an arbitrator's award can be vacated are corruption, fraud, or undue means in procurement of the award, evident partiality or corruption in the arbitrators, specified misconduct on the arbitrators' part, or "[w]here the arbitrators exceeded their powers." By enumerating the grounds for vacating an arbitration award, and specifying that those grounds may be shown "upon the application of any party," Congress evidenced its intent that the party making the application should also bear the burden of proving the defect. See, e.g., Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G., 579 F.2d 691, 700 (2d Cir.1978) (party asserting bias bears burden of proof).
 
 
 18
 Our interpretation of the statutory language is supported by the FAA's strong presumption in favor of enforcing arbitration awards. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 248 (2d Cir.), cert. dismissed, --- U.S. ----, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). It follows from this presumption that the award is valid unless it is proven otherwise. Under the FAA, the validity of an award is subject to attack only on those grounds listed in Sec. 10, and the policy of the FAA requires that the award be enforced unless one of those grounds is affirmatively shown to exist.
 
 B. The Motion to Vacate
 
 19
 Turning to the merits, the Defendants claim that even if they have the burden of challenging the award, they have satisfied it by showing that the panel based its award on the impermissible legal theory allegedly raised by WSA, and thereby exceeded its authority. See 9 U.S.C. Sec. 10(a)(4). We do not agree. In fact, the Defendants have presented no evidence from which we could conclusively infer that the panel based its award solely on the theory of fraud on the limited partners.
 
 
 20
 Our role in reviewing an arbitration award is "extremely limited." Fahnestock & Co. v. Waltman, 935 F.2d 512, 516 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991). Arbitrators are not required to provide the rationale for their award, and "courts generally will not look beyond the lump sum award in an attempt to analyze the reasoning processes of the arbitrators." Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 121 (2d Cir.1991) (internal quotations omitted); see Synergy Gas Co. v. Sasso, 853 F.2d 59, 64 (2d Cir.), cert. denied, 488 U.S. 994, 109 S.Ct. 559, 102 L.Ed.2d 585 (1988). Therefore, in a case like this one where a party claims the arbitrators based their holding on a claim not properly before the panel, the party challenging the award must show that no proper basis for the award can be inferred from the facts of the case. Barbier, 948 F.2d at 121; Fahnestock, 935 F.2d at 516.
 
 
 21
 While the Defendants have shown that the arbitrators accepted evidence that arguably related to the excluded fraud on the limited partners claim, several other theories properly before the arbitrators could have supported the award. There was more than sufficient evidence, for example, to support an award based on conversion or breach of fiduciary duty. Moreover, the evidence relating to the fraud perpetrated on the limited partners was also relevant to these valid claims since it tended to show the Defendants' overall scheme to attract capital investment in WSA by fraud and then to use the acquired funds unlawfully. The fact that evidence relating to the fraud on the limited partners was heard, or even that WSA affirmatively argued this theory before the arbitrators, does not persuade us that the arbitrators based their award solely on that ground.
 
 
 22
 Defendants assert, in addition, that the panel's exclusion of limited partner Gerald Blank from among award recipients indicates that the arbitrators meant to provide a remedy to the other limited partners, and thus had found a fraud on the limited partners. Blank was an employee of WSA who later purchased an indirect interest in the partnership. To be sure, the arbitrators excluded Blank from participating in the award due to his unclean hands. Apparently, the arbitrators saw Blank as attempting to benefit from WSA's suit by purchasing a portion of WSA's recovery in the form of a limited partnership interest and wanted to prevent this because of his own involvement in the fraud. However, since Blank would benefit as a limited partner from an award based on any legal theory, the exclusion of Blank does nothing toward proving that the award was grounded on the fraud on the limited partners. See Wall St. Assocs., 818 F.Supp. at 687.
 
 
 23
 As Judge Sand succinctly observed, "neither side can conclusively say what the ground of the award was, but the facts suggest that grounds other than the fraud on the limited partners can justify the award." Id. Under these circumstances, the award must be confirmed.
 
 II. Jurisdiction Over Wise and Friedman
 
 24
 Wise and Friedman additionally argue that they never consented to arbitrate before the AAA, and therefore were not subject to that body's jurisdiction. To the contrary, we find that Wise and Friedman did consent to arbitration before the AAA.
 
 
 25
 WSA commenced arbitration before the AAA in response to the July 1985 motion of Becker Paribas to compel arbitration, a motion in which both Wise and Friedman joined. Although the notice of motion did not specifically mention the AAA, the motion was submitted with a supporting affidavit from Becker Paribas's general counsel which quoted the arbitration clause of one of the Guaranty Agreements as a possible basis for granting the motion. The Guaranty Agreement itself was also attached to the motion papers together with five other agreements Becker Paribas sought to have the court enforce. In granting the motion, the district court did not initially specify any particular forum or which agreement was being enforced. However, the court subsequently rejected the Defendants' objection to the AAA. Although the court did not issue an opinion, it apparently determined that since the AAA was one of the fora included in the Guaranty Agreements, it was proper to allow the arbitration to proceed before the AAA. We agree.
 
 
 26
 We note that this is not a case where a party is claiming the absence of a contractual basis for submitting its claims to arbitration. See, e.g., Peerless Importers, Inc. v. Wine, Liquor & Distillery Workers Union Local One, 903 F.2d 924, 927 (2d Cir.1990). Wise and Friedman were aware of the nature of the charges against them in WSA's complaint, and unequivocally acquiesced to arbitration of those claims. The issue here relates not to the choice between judicial and arbitral resolution, but to the more limited question of whether a particular arbitration forum was appropriate. Just as consent to arbitration itself may be implied from a party's conduct, see Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1105 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991), so also can consent to a particular arbitration forum be inferred from a party's actions.
 
 
 27
 By joining Becker's motion without taking exception to any of the fora listed therein, Wise and Friedman obligated themselves to arbitrate in any forum to which the motion applied. The fact that WSA chose the forum does not enable Wise and Friedman to walk away from the motion in which they joined. WSA's choice of forum was consistent with the district court's order. That order was rendered in response to the Defendants' motion to compel arbitration, which in turn relied on the arbitration agreements submitted in support of the motion, one of which specified arbitration before the AAA. Given the indication by Wise and Friedman that they would consent to arbitrate before the AAA, the district court committed no error by denying their subsequent request to stay proceedings before that very forum.
 
 CONCLUSION
 
 28
 The judgment of the district court is affirmed.