**In the Matter of the ARBITRATION BETWEEN Zahid Hussain ASHRAF and Shahida Zahid, Petitioners,**

**and**

**REPUBLIC NEW YORK SECURITIES CORPORATION, Respondent.**

No. 98 Civ. 185(RLC).

United States District Court, S.D. New York.

July 28, 1998.

Layton Brooks & Hecht, for Petitioners, New York, New York, Daniel J. Brooks, Eamonn F. Foley, of counsel.

Arkin Schaffer & Kaplan LLP, for Respondent, New York, New York, Stanley S. Arkin, Hyman L. Schaffer, of counsel.

Sullivan & Cromwell, for Respondent, New York, New York, Kenneth M. Raisler, Tariq Mundiya, Marc De Leeuw, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

### I. Introduction

Republic New York Securities Corp. ("RNYSC"), a registered broker/dealer in securities and a futures commission merchant ("FCM") registered with the National Futures Association ("NFA"), moves pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., to vacate an arbitration award of $12,993,750 issued on December 29, 1997, by an NFA arbitration panel in favor of Zahid Hussain Ashraf and Shahida Zahid, husband and wife (hereafter collectively "Hussain"), citizens of Pakistan and residents of Dubai, United Arab Emirates. Hussain cross moves to confirm the award.

The controversy arose over the handling of Hussain's account by RNYSC. Since August 1994, Hussain had a commodities futures trading account with RNYSC in which Hussain traded almost exclusively in foreign currencies, particularly British pounds. In March, 1995, RNYSC doubled Hussain's margin requirements. On March 1 and 2, RNYSC executed one half of Hussain's trading orders and then liquidated the account.

The customer agreement provided for arbitration of any controversy arising from or relating to the account (Hussain Mem. at 4). Hussain filed a demand for arbitration on February 23, 1996. (*Id.*) A three member panel was appointed by NFA (*id.* at 5); the parties submitted a Joint Hearing Plan on March 11, 1997 (RNYSC Mem. at 9); the panel heard ten days of testimony commencing on March 24, 1997, with closing arguments on September 11, 1997 (*id.*); post-hearing briefs were filed simultaneously on November 14, 1997. (*Id.* at 10).

On December 29, 1997, the panel issued its award. As is not unusual, the panel issued no opinion explaining its decision. However, aside from the award at issue here, the panel explicitly denied Hussain's claims against

RNYSC for punitive damages, treble damages, interest, attorneys fees and other costs.

RNYSC argues that a damages theory based upon the exchange of short British pounds forwards contracts into an equivalent quantity of short British pounds futures contracts (exchange of physicals, hereafter "EFP"), presumably how the award was formulated, was not addressed at the hearing; that no evidence was presented to support an award for damages relating to EFP (RNYSC Mem. at 3); that Hussain's first damages calculation failed to mention or identify any damages resulting from failure to execute the EFP ordered on March 1, 1995 (*id.* at 8); that neither Hussain's revised damages calculation nor his final damage calculation identified any EFP damages, (*id.*); that there was no mention of EFP in the Joint Hearing Plan, which serves a function similar to a pretrial brief or order (*id.* at 9); that no mention of EFP damages was testified to or mentioned by any witness or attorney during the ten days of hearings before the panel (*id.*); that in three pages of his fifty page post-hearing brief, Hussain for the first time raised the issue of RNYSC's failure to execute the EFP ordered on March 1, 1995, and identified $12,993,750 as damages resulting from that failure (*id.* at 10); that prior to the post-hearing brief, "Hussain had never argued [entitlement] to damages [based on] any theory other than Close–Out Damages" (*id.* at 11); that since RNYSC had no advance notice of the EFP damages claim, it did not address the issue in its own post-hearing memorandum served at the same time; and being barred by the arbitration panel from filing additional memorandum, it could not address the issue as without merit and unfair in being raised by Hussain in circumstances when the argument could not have been challenged. (*Id.* at 12).

Hussain takes issue with these contentions. He asserts that RNYSC was instructed to convert his short British pounds forwards contracts into an equivalent quantity of short British pounds futures contracts. He complained that this EFP order was not fully executed; that RNYSC liquidated Hussain's cash positions on the interbank market rather than on the futures exchange, where the liquidation would have taken place if the EFP of the cash positions into futures contracts had been executed as requested. (Hussain Mem. at 6–7). Hussain argues that the record supports the panel's award. He relies on Exhibit 35 introduced at the arbitration hearing and filed here as Appendix E to Affidavit of Daniel J. Brooks in support of Hussain's cross motion. That document shows cancellation on March 2, 1995 at 10:50 A.M. of a purchase of 437.5 million British pounds at a price of $1.5881 per pound for a total cost of $694,793,750, and three purchases of British pounds on the same day at $1.6178 per pound—62.5 million at 1:52 P.M. for a total cost of $101,112,500; 125 million at 1:02 P.M. for a total cost of $202,225,000; 250 million at 1:56 P.M. for a total cost of $404,-450,000. The difference in costs to Hussain between what the document labels as a canceled transaction and the three purchases is $12,993,750, the amount of the award.

RNYSC contends that what Exhibit 35 lists as a March 2 cancellation was a failure to convert forwards into futures and was not a cancellation of an outright buy order (RNYSC Mem. at 18), and that Hussain misled the panel by confusing "the EFP transaction with an outright buy," and that the 0.0297 price differential between the so-called canceled order and the three subsequent purchases was the exchange rate rise in the British pound between March 1 and March 2. (*Id.* at 18–19).

## II. DETERMINATION

One of the bases for vacating an award provided under § 10(c) of the Federal Arbitration Act is when the arbitrators are guilty of misconduct "or any other misbehavior by which the rights of any party have been prejudiced." RNYSC invokes this provision claiming that it was subjected to fundamental unfairness in the arbitration process when Hussain's EFP theory of damages surfaced for the first time in his post-hearing submission, catching RNYSC by surprise, with no opportunity to establish that the claim was without merit. It argues that the process imposed by the panel in permitting RNYSC to be put in this position was fundamentally unfair and denied RNYSC a fair hearing.

All parties are entitled to notice and an opportunity to be heard. *Totem Marine Tug & Barge, Inc. v. North Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir.1979). However, defendant can prevail only if no "ground for the arbitrator[s'] decision can be inferred from the facts of the case." *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir.1972).

Arbitration panels' determinations are generally accorded great deference, and there is a strong presumption in favor of enforcing arbitration awards. *See, e.g., Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). A party seeking to vacate an arbitration award has the burden of proof, *see, Matter of Andros Compania Maritima, S.A. of Kissavos (Marc Rich & Co.,A.G.)*, 579 F.2d 691, 700 (2d Cir.1978), and the level that must be reached to prevail is extremely high. *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987). *Wall Street Associates, L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir.1994) (In an action to vacate an arbitrators' award the burden is on the moving party to establish any of the grounds enumerated under § 10(a) of the Federal Arbitration Act which includes misconduct prejudicing the rights of a party.)

Under Second Circuit jurisprudence in this area court review is very narrowly circumscribed to avoid undermining the raison d'etre of arbitration—settling disputes efficiently and avoiding the long and expensive litigation process. *Folkways Music Publishers v. Weiss*, 989 F.2d, 108, 111 (2d Cir.1993). An award must be upheld on "even a barely colorable justification for the outcome reached." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir.1997) (quoting from *Matter of Andros Compania Maritima, S.A.*, 579 F.2d at 704). If the ground for the arbitrators' decision can be inferred from the facts, even if based on an error of law or fact, it must be confirmed. *Fahnestock & Co. v. Waltman*, 935 F.2d, 512, 516 (2d Cir.1991); *Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892–93 (2d Cir.1985) (Neither an erroneous application of the law or an erroneous determination of the facts suffices to justify vacat-ing an arbitration award). There is no need to explain the rationale underlying the award, and all ambiguities must be resolved in favor of confirmation of the award. *Pompano–Windy City Partners, Ltd. v. Bear Stearns & Co., Inc.*, 794 F.Supp. 1265, 1275 (S.D.N.Y.1992) (Leisure, J). "Only the most egregious error adversely affecting the rights of a party would justify" invalidating an award. *Id.* at 1277 (quoting from *Hunt v. Mobil Oil Corp.*, 654 F.Supp. 1487, 1512 (S.D.N.Y.1987) (Weinfeld, J.)).

While judicial review is narrowly limited, *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir.1997), where fundamental fairness is violated, the panel's determination becomes open to judicial review. *Id.* at 20. Although misconduct jeopardizes an award, it "must amount to a denial of fundamental fairness of the arbitration proceeding" for the movant to prevail. *Transit Cas. Co. v. Trenwick Reinsurance Co.*, 659 F.Supp. 1346, 1354 (S.D.N.Y.1987) (Ward, J.), *aff'd*, 841 F.2d 1117 (2d Cir.1988). Manifest disregard of the law, a judicially created ground for vacating an award, requires "something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Siegel*, 779 F.2d at 892; *Trans–Asiatic Oil Ltd., S.A. M/V Silver Lady v. UCO Marine Int'l Ltd.*, 618 F.Supp. 132, 135 (S.D.N.Y. 1985) (Leisure, J.) (award confirmed absent showing arbitrators deliberately ignoring the law). A misapplication is not enough, and the arbitrators' conclusions must be given deference even when erroneous. *American Postal Workers Union v. U.S. Postal Service*, 682 F.2d 1280, 1285 (9th Cir.1982), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983). Even an ambiguity in the decision which may infer that the arbitrators exceeded their authority does not warrant refusing to enforce the award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Nonetheless, when proof at the hearing fails to support the award, it should be vacated. *Totem Marine Tug & Barge, Inc.*, 607 F.2d at 651.

■ While defendants argue that the panel could only have based the award on the new theory surfacing for the first time in Hussain's post-hearing brief, the evidence presented in support of that contention is not conclusive, as it must be. *Wall Street Associates, L.P.*, 27 F.3d at 849. RNYSC must show that no proper basis for the award can be inferred from the facts of the case, *id.*, which it cannot do.

Exhibit 35 introduced at the hearing appears to be the basis for the award. That document was prepared by RNYSC's expert witness, a Dr. Robert J. Mackay, from information supplied by RNYSC's counsel.[1] During the hearing it was the subject of inquiry by counsel for Hussain and significant colloquy between the chairman of the panel and RNYSC's expert:

Q. Let me ask you this. If you're trying to establish the time of liquidation* * * *what would be the best evidence of that?

A. (Mackay) Ideally, you'd want to look at all the office orders when it was called in and the floor * * *tickets and see if things match* * * *

Q. And you would agree with me that it's absolutely catechism that in this industry you right(sic) up order tickets when you receive them. You time stamp them and you communicate them. Correct?

A. That's correct.

Tr. 2841–42.

\*        \*        \*        \*        \*        \*

Q. I guess what I'm having trouble understanding is that we've identified times on [Ex.35] without any reference to the order tickets. * * * Were you working under the impression that these times that were given to you by Sullivan & Cromwell were taken from the original order tickets?

A. I was working under the impression that I–we checked these against the confirms coming back that was a real good indicator of time. . . .

Tr. 2842.

\*        \*        \*        \*        \*        \*

Q. How do you know that the first entry there [referring to Exhibit 35], 7,000 at 10:50 a.m. was canceled? Was that on appendix D that was supplied to you by Sullivan & Cromwell.

A. Yes, it was and I don't know it from looking at [Joint Ex. 29—a compendium of copies of all the orders produced relating to the liquidation (T.2844) ]

Q. So you made no independent inquiry as to whether it was canceled.

A. Right.

Q. And when you look at 1009 and 1010 you can't tell from those order tickets whether they were canceled or not, can you?

A. No. I can't.

Tr. 2847–48.

\*        \*        \*        \*        \*        \*

Chm Hanrahan:

Dr Mackay * * * I am looking a C 35* * *and the trades of 3/2/95, in particular the ones marked canceled, the first two 7,000 contracts marked canceled. What are we looking at here? I see a trade for 7000 contracts on the top, 7000 just above that line and another one for 7000 where it says BP March futures just above the next line. Are they all related trades or what?

The Witness:

Well my understanding of this is that the two forward trades, the top one and the bottom one were basically canceled out if they were ever executed, and in fact, then what you really see is the next 7000, the second 7000 forward is the EFP against the short futures* * * * *.

Chm Hanrahan:

Now when a trade is canceled isn't there a procedure or paper trail for that too?

The Witness:

I think yes, you'd expect that and it depends upon how the precise cancellation happened.

Tr. 2880–81.

Apparently, there was no document produced to precisely define the nature of the referenced March cancellation. RNYSC ar-

---

1. Transcript, dated August 13, 1997, at 2834–35, 2847–48, 2849–51.

gues that it was not an executed buy order subsequently canceled. Hussain argues to the contrary, and apparently the panel was persuaded that Hussain was correct. RNYSC failed to meet its burden of proof obligation in convincing the court that its contentions should be adopted here.

Moreover, RNYSC's contention that the EFP issue was never raised at the hearing appears to be in error: ¶ 21 of Hussain's Statement of Claim, Appendix C to Mackay Affidavit in support of Motion to vacate the Award, states in part:

> After completing the liquidation [Hussain] instructed RNYSC to convert the short spot position into the equivalent quantity (14,000) of short futures contracts. This order (an exchange for physicals ("EFP")) was confirmed by RNYSC which should have left in the Account a net short position* * *of 8,000 British Pound futures contracts in addition to the 4,000 remaining strangles. The EFP order was given by [Hussain because] by converting the spot positions into futures contracts, the offsetting long and short British Pound positions would both be in futures. Another reason for the EFP was that the exchange margin requirement for British Pound futures * * *was less than the [new margin requirement imposed by RNYSC].

This claim is asserted at another point in the Statement of Claim:

> ¶ 27 n5 * * *instead of liquidating the 8,000 short futures contracts which should have been in the Account pursuant to the EFP, RNYSC apparently converted those futures back into spot positions and liquidated those positions on the interbank market. Thus, RNYSC either deliberately failed to execute the EFP and falsely confirmed that the EFP had been executed or, if the EFP was in fact executed, RNYSC wrongfully and without authorization converted the futures contracts back into spot positions prior to liquidating them.

In ¶ 48 of the Statement of Claim it is asserted that the liquidation was improper and breached RNYSC'S fiduciary duty "because it was accomplished on the spot market, as though the previously-confirmed EFP

of spot positions into futures contracts had not been executed."

Hussain asserted an EFP theory of damages in these quoted statements. It may well be that this theory was not developed at the hearing. Hussain was making a claim for considerably larger damages than the EFP theory could support. In his brief here, he argues, supported by the record (see transcript excerpts *supra*) that he did not have access to the information supplied to Dr. Mackay by RNYSC's counsel but not to Hussain, on the basis of which Dr. Mackay prepared his "working document" which was admitted into evidence as Exhibit 35 on August 13, 1997, the last day of the hearing. (Hussain Mem. at 26–27). That document as shown above lists cancellation of British pound purchases at lower exchange rates and subsequent purchases of British pounds in total equal in amount to the canceled transaction at higher exchange rates. Under such circumstances, Hussain was in no position to give specificity to the EFP theory of damages referenced in his statement of claim until the post-hearing brief. Since the specific claim for $12,993,750 is based on RNYSC documents or information it supplied its witness to assist him in the preparation of his testimony, it is difficult to seriously credit RNYSC's assertion of lack of advance notice or surprise.

Moreover, I am not certain that parties are under any obligation to cling to asserted theories and theses throughout the course of the litigation. As I understand it, theories may change from time to time as long as they have evidentiary support. Nor am I persuaded that the simultaneous filing of post-hearing briefs, with reply briefs being barred, was an unfair process in fact or in the abstract. Such a procedure is not uncommon in court submissions.

Even assuming arguendo that RNYSC is correct and that it was fundamentally unfair for it to have been deprived of the opportunity to contest Hussain's late change of position, it still cannot prevail here. Under NFA Code of Arbitration as of December 1, 1997, pursuant to ¶ 6053.7(g), a party may move to reopen the record "for good cause at any time prior to the Panel

rendering its award." Such a motion automatically stays the time period in which the award is to be issued. *Id.* Thus, prior to the issuance of the award, RNYSC could have invoked ¶ 6053.7(g) to make to the Panel the argument being made here as to the unfairness of considering the theory being advanced and its lack of merit in any event.

Moreover, the NFA Code provided an additional opportunity for RNYSC to make its case before the arbitrators. ¶ 6059.3(c)(1) and (2) provides that the Panel may modify the award upon a party's written request received within 20 days from the date of service of the award if (1) there is an evident miscalculation of figures or an evident material mistake in the description of any * * * thing or property referred to in the award or (2) arbitrators have awarded upon a matter not submitted to them. The timely filing of such a request automatically stays the finality of the award until the Panel acts upon the request. RNYSC did not avail itself of this provision.

■ Its failure or refusal to invoke either provision of the NFA Code to raise before the arbitrators the issues it seeks to bring here is fatal. When a party has an opportunity to raise objections before the arbitration panel, under this circuit's jurisprudence failure to do so constitutes a waiver. *La Societe Nationale v. Shaheen Natural Resources Company, Inc.,* 585 F.Supp. 57, 65 (S.D.N.Y. 1983) (Duffy, J.). Failure to object to an award either prior to delivery of the award or upon its rendition constitutes a waiver of the right to contest the decision. *Hunt,* 654 F.Supp. at 1517–18 (a party may not "wait in ambush" to make claims before the court that could have been raised before the arbitration panel); *accord, Svoboda v. Negey Associates, Inc.,* 655 F.Supp. 1329, 1332 and n. 9 (S.D.N.Y.1987) (Weinfeld, J.); *McMahon v. RMS Electronics, Inc.,* 695 F.Supp. 1557, 1559 (S.D.N.Y.1988) (Sweet, J); *International Standard Electric Corp. v. Bridas Sociedad Anonima Petrolera Industrial Y Comercial,* 745 F.Supp. 172, 180 (S.D.N.Y.1990) (Conboy, J.). *Cf., Dirussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 822 (2d Cir. 1997) (court cannot consider issue attacking award first presented to court and not raised before panel).

The NFA Code afforded RNYSC two opportunities to confront the panel with its claim of unfairness, surprise and without merit which it failed to invoke. RNYSC complains that it never had opportunity to address Hussain's new damage theory "raised for the first time in a memorandum of law to which RNYSC never had the opportunity to respond". (RNYSC Mem. at 12). It did not have the opportunity to respond with a reply brief, but it could have invoked relevant NFA Code provisions providing for the right to seek to reopen the record before issuance of the award or to modify the award after its rendition. By failing to take either step, it has forfeited whatever right it may have had to assert those claims here.

RNYSC strenuously argues that whether the EFP transaction was executed or not Hussain was caused no significant damages because no actual change in the value of the account or in the account's "exposure to the risk of increases in the price of the British pound" would have occurred. (RNYSC' Mem. at 17–18). However true that might be, it is not for the court's consideration. It is an argument, along with the others, that should have been presented to the panel under NFA provisions before there is entitlement to bring them here. Both sides have argued the merits of their case which are outside the area of court review. The motion to vacate the award is denied. The cross motion to confirm the award is granted.

**IT IS SO ORDERED.**