15-0345-cv
Credit Suisse Secs. LLC v. Tracy, et al.

# 𝕴𝖓 𝖙𝖍𝖊

# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## 𝕱𝖔𝖗 𝖙𝖍𝖊 𝕾𝖊𝖈𝖔𝖓𝖉 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

———————

August Term, 2015

No. 15-345-cv

CREDIT SUISSE SECURITIES (USA) LLC,

*Petitioner-Appellee,*

*v.*

JOHN DAVID TRACY, CHARLES THARNSTROM, LEONARD KORTEKAAS,

CHRISTOPHER CHAPIN, AND STEVEN LAZNY,

*Respondents-Appellants.*[*]

———————

Appeal from the United States District Court

for the Southern District of New York.

No. 14-cv-8568 – Naomi Reice Buchwald, *Judge.*

———————

ARGUED: SEPTEMBER 16, 2015

DECIDED: JANUARY 28, 2016

---

[*] The Clerk of the Court is directed to amend the official caption to conform to the above.

Before: NEWMAN, SACK, and DRONEY, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Buchwald, *J.*) ordering former employees of Credit Suisse Securities (USA) LLC to dismiss their claims in arbitration before the Financial Industry Regulatory Authority, and compelling employees to pursue their claims against Credit Suisse in the JAMS arbitral forum in accordance with the terms of their employment agreements. We **AFFIRM**.

ALEXANDER C.B. BARNARD, Credit Suisse Securities (USA) LLC, New York, NY (Stephen M. Kramarsky, Ariel P. Cannon, and Angela L. Harris, Dewey Pegno & Kramarsky LLP, New York, NY, *on the brief*) *for Petitioner-Appellee*.

CYNTHIA R. LEVIN MOULTON, Moulton, Wilson & Arney, LLP, Houston, TX (Louis M. Lagalante, Gallagher, Harnett & Lagalante LLP, New York, NY, *on the brief*) *for Respondents-Appellants*.

DRONEY, *Circuit Judge*:

The Respondents-Appellants are five former employees of Credit Suisse Securities (USA) LLC ("Credit Suisse") who entered into employment agreements with Credit Suisse that included provisions to resolve all employment-related disputes by arbitration before a private arbitration provider. Following their resignation from Credit Suisse, the employees began arbitration proceedings before the Financial Industry Regulatory Authority ("FINRA") concerning employment-related disputes. Credit Suisse sought to compel the employees to dismiss the FINRA arbitration and pursue their claims in a non-FINRA arbitral forum. The district court (Buchwald, *J.*) granted Credit Suisse's petition and entered judgment ordering the employees to pursue their claims in a non-FINRA arbitral forum.

On appeal,[1] the employees argue that FINRA Rule 13200 prohibits waiver of arbitration in a FINRA forum. For the reasons set forth below, we hold Rule 13200 does not prohibit a pre-dispute waiver of a FINRA arbitral forum.

Accordingly, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

Respondents-Appellants John David Tracy, Charles Tharnstrom, Leonard Kortekaas, Christopher Chapin, and Steven Lazny (collectively "Employees") are a team of Los Angeles-based financial advisors who began working at Credit Suisse in April 2008 after resigning from Goldman Sachs & Co.[2] Upon beginning work at Credit Suisse, Employees entered into employment agreements that included a provision to resolve all employment-related disputes

---

[1] Because the district court's judgment finally disposes of the petition, the judgment is clearly appealable. *See Clarendon Nat'l Ins. Co. v. Kings Reinsurance Co., Ltd.*, 241 F.3d 131, 133-34 (2d Cir. 2001).

[2] Lazny was hired by Credit Suisse as an investment analyst to support the other Respondents-Appellants.

4

through the Credit Suisse Employment Dispute Resolution Program ("EDRP"). The agreements provide as follows:

> All United States employees are subject to the Credit Suisse United States Employment Dispute Resolution Program, as amended from time to time (the "Program"). The Program provides that all employment-related claims, including all statutory claims, an employee may at any time have are to be resolved through a three-step process consisting of an internal grievance procedure; mediation before an independent service provider; and (in the case in which a claim is not resolved through the first two steps) binding arbitration before one of three independent service providers in accordance with its arbitration rules. Any disputes arising hereunder shall be resolved in accordance with such Program. A copy of the Program as currently in effect is annexed hereto.[3]

J.A. 55.

The EDRP provided further details as to the three-step process discussed in the contract, including that "[a]ll arbitrations under the Program will be conducted by a single arbitrator, or upon written

---

[3] Employees also executed other agreements and annual certifications confirming their participation in the EDRP.

consent of both parties, a panel of three arbitrators, supplied by JAMS[4] or the American Arbitration Association [(the "AAA")]."[5] J.A. 191.

While still employed at Credit Suisse, a dispute arose between Employees and Credit Suisse. That dispute was a result of certain challenges raised by Employees to the amounts they owed Credit Suisse under the Credit Suisse "Currency Facility" plan.[6] The Currency Facility plan was an optional program for employees to "hedge" equity portions of their compensation from fluctuations in exchange rates. In the event an employee suffered a loss under the program, the employee was required to pay Credit Suisse any deficit. Employees disputed the amounts Credit Suisse claimed they

---

[4] JAMS, formerly Judicial Arbitration and Mediation Services, Inc., is a private alternative dispute resolution provider. *See JAMS Arbitration, Mediation, and ADR Services*, JAMS, http://www.jamsadr.com (last visited Jan. 4, 2016).

[5] The contract provided that "one of three independent service providers" would conduct arbitration. J.A. 55. The EDRP specified only two such service providers, JAMS and the AAA.

[6] Lazny was not involved in the Currency Facility dispute.

owed under the plan and attempted, unsuccessfully, to resolve the dispute through the first two stages of the EDRP, including private mediation.

On March 27, 2014, Employees resigned from Credit Suisse and became employed by Merrill Lynch. As a result of the still unpaid balance relating to the Currency Facility plan, Credit Suisse commenced arbitration on this issue in JAMS on April 15, 2014. On May 14, 2014, Employees filed a statement of counter-claims and affirmative defenses in that arbitration.[7]

Also on May 14, 2014, Credit Suisse initiated a JAMS mediation against Employees claiming improper solicitation of Credit Suisse clients and employees in connection with their move to Merrill Lynch. On October 7, 2014, following unsuccessful mediation of the employment-related claims, Employees and Merrill Lynch initiated an arbitration against Credit Suisse with FINRA.

---

[7] Employees do not challenge the Currency Facility arbitration before JAMS.

7

That Statement of Claim asserted that Credit Suisse breached an industry agreement regarding employee mobility and clients' interests of privacy and freedom of choice called the "Protocol for Broker Recruiting,"[8] and was liable to Employees for defamation, tortious interference, and unfair competition.

Rather than participate in the FINRA arbitration, Credit Suisse commenced an action in the Southern District of New York seeking an order to stay or dismiss the FINRA arbitration and to compel arbitration by JAMS in accordance with the EDRP. Credit Suisse argued that the claims raised by Employees were "Employment-Related Claims" under the EDRP and were therefore required to be arbitrated before JAMS or AAA. Employees argued before the

---

[8] The Protocol for Broker Recruiting is an agreement among more than 1,000 firms in the securities industry. Credit Suisse and Merrill Lynch are signatories to the Protocol. The stated goal of the Protocol is "to further the clients' interests of privacy and freedom of choice in connection with the movement of their Registered Representatives ('RRs') between firms." J.A. 25. Signatories of the Protocol "agree to forego litigation against their departing [RRs] . . . when the RR moves between signatory firms and complies in good faith with the terms of the Protocol." *Id.*

8

district court that FINRA Rule 13200 ("Rule 13200"), which provides that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among . . . Members and Associated Persons," prohibited Credit Suisse from selecting a non-FINRA arbitral forum for arbitration. The district court granted Credit Suisse's petition, ordered Employees to dismiss their claims in the FINRA arbitration and compelled arbitration in a JAMS forum.[9] Employees appeal the district court's judgment effectuating that order.

---

[9] Merrill Lynch moved to intervene in the action below, but that motion was denied by the district court in the order granting Credit Suisse's stay. Employees do not challenge this decision on appeal.

**DISCUSSION**

## I.   Standard of Review

This Court reviews the grant of a petition to compel arbitration *de novo*. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003).

## II.   FINRA Rule 13200

FINRA is an independent organization authorized by Congress to regulate the U.S. securities markets and professionals who sell securities in the United States. "FINRA is a self-regulatory organization ["SRO"] that (among other things) sponsors an arbitration forum." *Cohen v. UBS Fin. Servs., Inc.*, 799 F.3d 174, 176 (2d Cir. 2015). Use of the FINRA arbitration forum to adjudicate disputes between its member securities firms and "associated persons" is governed by the Code of Arbitration Procedure for Industry Disputes (the "Code"), which regulates different features of

arbitration between FINRA members and their employees. *Id.* Again, Rule 13200 of the Code states:

> Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among . . . Members and Associated Persons.

J.A. 166.

The parties do not dispute that Credit Suisse is a FINRA "member" or that Employees are "associated persons" under Rule 13200. Neither do they question the fact that the Employees' employment-related claims and Credit Suisse's improper-solicitation claims "arise[] out of the business activities" of Credit Suisse and Employees. *See* FINRA Rule 13200. Nor is there any dispute that, as a member of FINRA, Credit Suisse is bound to follow FINRA's arbitration rules. Arbitration rules, as we have previously concluded, bind FINRA members, *see UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc.*, 660 F.3d 643, 648-49 (2d Cir. 2011) ("Upon joining

11

FINRA, a member organization agrees to comply with FINRA's rules . . . including its Code and relevant arbitration provisions contained therein.") Nor do the parties dispute that Employees entered into the employment agreements that contained the EDRP provision, or that the EDRP provided for resolution of employment-related claims in a private non-FINRA arbitral forum.

The parties do disagree, however, as to whether Rule 13200 requires them to arbitrate their disputes before FINRA. Employees argue that the plain language of Rule 13200 requires arbitration in a FINRA forum and that the rule is not subject to waiver. Credit Suisse contends to the contrary that notwithstanding the mandatory language of Rule 13200, it can be waived by a private pre-dispute arbitration agreement pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, such as that included in Employees' employment agreements.[10]

---

[10] Under the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid,

We first address whether there is an inconsistency between the arbitration provisions of the employment agreements and Rule 13200, and we then address whether the Rule 13200 requirement of arbitration in the FINRA forum may be waived in a pre-dispute agreement.

*A. Inconsistency Between FINRA Rule 13200 and the EDRP*

Employees argue that the plain terms of Rule 13200 require arbitration under the Code. Unless there is an explicit exception in the FINRA Rules,[11] Employees argue, FINRA requires arbitration in a FINRA forum.

---

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (noting that the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms"). Both the EDRP and Rule 13200 call for arbitration, and the FAA does not prefer one type of arbitration over another. *See Volt*, 489 U.S. at 476 ("There is no federal policy favoring arbitration under a certain set of procedural rules . . . .").

[11] An example of an exception allowing for arbitration outside a FINRA forum would be a dispute "arising out of the insurance business activities of a member that is also an insurance company." FINRA Rule 13200(b); J.A. 166. Credit Suisse does not assert that such an exception applies here.

13

Rule 13200 plainly requires arbitration pursuant to the FINRA code: "a dispute must be arbitrated under the Code." To interpret the plain language of the Rule otherwise would render the phrase "under the Code" of no effect. This Court must construe the text of the rule so that no part is rendered inoperative or superfluous. *Cf. Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 245 (2d Cir. 2014).

Credit Suisse argues that Rule 13200 makes no mention of a specific forum and so cannot preclude arbitration by JAMS or the AAA. While Rule 13200 does not explicitly require arbitration in a FINRA forum, by requiring that "a dispute must be arbitrated under the Code," the Rule must be read to require arbitration in a FINRA forum because the Code of Arbitration Procedure applies only to FINRA arbitrations. Therefore, Rule 13200 by its own terms requires arbitration in a FINRA forum.

Because the Credit Suisse EDRP requires that arbitration take place in a non-FINRA forum, it is clearly inconsistent with Rule 13200. But this does not mean that Rule 13200 necessarily trumps the parties' pre-dispute private agreement to arbitrate in a non-FINRA arbitral forum, for if Rule 13200 can be waived, then arbitration before FINRA is not required.

## B. Waiver of FINRA Rule 13200

Credit Suisse argues that even if Rule 13200 is inconsistent with the EDRP, this does not preclude waiver of the FINRA forum by the Employees in a pre-dispute agreement. Employees maintain that FINRA Rule 13200 cannot be waived, in part because FINRA arbitrations contribute to FINRA and the SEC's regulation of the securities markets. Employees also argue that because the SEC has approved the FINRA arbitration procedure, Rule 13200 has the force of law and cannot be superseded by a pre-dispute private agreement. We disagree. Our case law leads to the conclusion that a

pre-dispute private agreement to arbitrate before a non-FINRA arbitral forum is enforceable.

We have held in several cases that an SRO's arbitration provisions are default rules which may be overridden by more specific contractual terms. *See, e.g., Ameriprise Fin. Servs., Inc. v. Beland* (*In re Am. Express Fin. Advisors Secs. Litig.*), 672 F.3d 113, 132 (2d Cir. 2011) ("In particular, as relevant here, different or additional contractual arrangements for arbitration can supersede the rights conferred on a customer by virtue of a broker's membership in a self-regulating organization such as FINRA.") (alterations and quotation marks omitted).

For instance, in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir. 1990), a Merrill Lynch customer had agreed in an options trading agreement with Merrill Lynch to arbitrate any dispute about his trades before the New York Stock Exchange ("NYSE"). Merrill Lynch was a member of the American

16

Stock Exchange ("AMEX"), and AMEX's Constitution provided for a customer's right to arbitration before the AAA. After a dispute arose concerning the customer's trades in put and call options, he demanded arbitration before the AAA. However, the district court compelled arbitration before the NYSE, pursuant to the customer trading agreement. We affirmed, and concluded that the arbitration provisions of the AMEX Constitution "may be superseded by a more specific customer agreement of the parties." *Id.* at 112.

Similarly in *Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority*, 764 F.3d 210 (2d Cir. 2014), we held that customers of FINRA-regulated securities firms were required to litigate their claims pursuant to a forum selection clause in their customer agreements rather than arbitrate under a FINRA rule requiring that customer disputes be arbitrated before FINRA if the customer chooses arbitration. *See id.* at 214-17.

We have also recently addressed the waiver of a different FINRA Rule in the employee-member context. In *Cohen v. UBS Financial Services, Inc.*, we considered whether Rule 13204, which bans arbitrations of class action and collective claims in certain instances, can be waived by employees in a pre-dispute agreement. Cohen, a financial advisor for UBS Financial ("UBS"), had executed a class action waiver and an arbitration agreement as part of his initial employment contract with UBS. He subsequently filed a putative class action suit against UBS asserting wage and hour compensation violations. The district court granted UBS's motion for a stay of the action pending FINRA arbitration. On appeal, Cohen argued that UBS could not enforce the pre-dispute agreement because Rule 13204 prohibited enforcement of an arbitration agreement during the course of a class action. We concluded that "Rule 13204 says nothing about class action and collective action waivers, and cannot be read to bar enforcement of them." *Id.* at 178.

18

Although Rule 13204 "bars arbitration of a claim so long as it is embedded in a class action," that Rule "does not preserve the right to assert a claim in class or collective form *notwithstanding a contractual waiver*." *Id.* (emphasis added). Cohen's pre-dispute class action waiver and agreement to arbitrate was thus enforceable.

Here, as in *Merrill Lynch*, *Goldman*, and *Cohen*, the parties signed a pre-dispute agreement that overrode an SRO's default rule: The Employees signed a pre-dispute waiver agreeing to arbitrate any employment related claims in a non-FINRA arbitral forum. Rule 13200 states that such disputes must be arbitrated "under the Code," but, like Rule 13204 addressed in *Cohen*, it does not address the issue of whether arbitration in a FINRA forum may be waived before a dispute arises.[12] Our decisions addressing a conflict between an SRO's broad arbitration rules and a specific pre-dispute agreement

---

[12] Had FINRA wished to clearly state that Rule 13200 cannot be waived, it could have done so. In the customer-member context, FINRA requires that a predispute arbitration agreement not include any condition that "limits or contradicts the rules of any self-regulatory organization." Rule 2268(d)(1).

between an SRO member and an employee or customer hold that the more specific agreement will prevail. *See, e.g.*, *Cohen*, 799 F.3d at 180; *Goldman*, 764 F.3d at 214-17; *Kidder, Peabody & Co., v. Zinsmeyer Trs. P'ship*, 41 F.3d 861, 864 (2d Cir. 1994) (holding that "different or additional contractual arrangements for arbitration can supersede the rights conferred on the customer by virtue of the broker's membership in a self-regulating organization"); *Merrill Lynch*, 903 F.2d at 112. Accordingly, the EDRP's arbitration-forum provisions are enforceable, and the district court did not err in compelling Employees to dismiss the FINRA arbitration and pursue their claims before JAMS.

It is true, as Employees argue, that a pre-dispute complete waiver of arbitration has been held unenforceable in the employment context. In *Thomas James Associates v. Jameson*, 102 F.3d 60 (2d Cir. 1996), a broker at a securities firm executed an employment agreement that waived arbitration of employment

disputes. The rules of the National Association of Securities Dealers ("NASD")[13] required such disputes to be arbitrated, although it did not specify the forum. We held the arbitration waiver unenforceable based on the public policy favoring arbitration of disputes. *Id.* at 66-67.

Jameson does not compel non-enforcement of the EDRP here, however. Rather than waive the ability to arbitrate, Employees merely waived the right to arbitrate in a FINRA *forum*. *Cf. Credit Suisse First Bos., LLC v. Groves*, 333 F. Supp. 2d 229, 232 (S.D.N.Y. 2004) ("[N]othing in *Jameson* or in the law extends the public policy favoring arbitration to the point of favoring a particular arbitral forum, or one forum over another."). Forum preference does not raise the same public policy concern as a complete waiver of arbitration.

---

[13] NASD-promulgated rules were the predecessor to FINRA's rules.

Employees' argument that FINRA arbitration allows for more consistency in arbitration awards is unavailing as a factual matter. Although the results of a FINRA arbitration award are publically disclosed, the awards include only the names of the parties, a summary of the issues, the damages awarded, and other general information about the nature of the arbitration. *See* FINRA Rule 13904(e), (h); J.A. 177-78. Parties may request an "explained decision," but only if there is a joint request. *See* FINRA Rule 13904(g); J.A. 177-78. The publicly available arbitration award, then, typically contains little helpful information that would provide guidance for future awards or enforcement actions.

Finally, Employees assert that since FINRA arbitration panels are comprised of FINRA-trained and approved arbitrators, private arbitrators such as those that make up JAMS and AAA panels may have lesser qualifications. But Employees do not assert any basis for concluding that JAMS or AAA arbitrators would be less competent.

In fact, Employees have willingly engaged in arbitration before JAMS related to the Currency Facility dispute.[14]

**CONCLUSION**

For the foregoing reasons, we conclude that Rule 13200 does not prohibit the enforcement of pre-dispute waivers of a FINRA arbitral forum.  Accordingly, we **AFFIRM** the judgment of the district court.

---

[14] Employees also point to a FINRA "guidance letter" regarding a proposed change to Rule 13204. The letter, written by a FINRA assistant chief counsel and addressed to the SEC, states that members may not "prohibit employees from arbitrating their disputes with the firm in FINRA's dispute resolution forum." However, the FINRA Board of Governors expressed a contrary view in *In re Dep't of Enforcement v. Charles Schwab & Co.*, No. 2011029760201, 2014 WL 1665738 (FINRA Bd. of Governors Apr. 24, 2014), which provides that "there are no restrictions upon firms regarding the content of predispute arbitration agreements with employees." *Id.* at *8.